**Clarence H. BENNETT, et al.,**
**Appellants,**

v.

**Gilbert KIGGINS et al., Appellees.**

**Nos. 10089, 10351 \* and 10546 \*.**

District of Columbia Court of Appeals.

Argued Nov. 17, 1976.
Decided Aug. 18, 1977.

\* *See* note 2, *infra.*

Ellsworth T. Simpson, Washington, D. C., for appellants.

Andrew J. Connick, New York City, pro hac vice, by special leave of the court, for appellees. James A. Hourihan and Gail Starling Marshall, Washington, D. C., were on the brief for appellees.

Before GALLAGHER, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal from a grant of summary judgment on cross-motions for that relief. The unverified complaint alleged that certain fraudulent misrepresentations and omissions attributable to appellees were made to appellants in connection with the latters' purchases of undivided interests in joint ventures. These ventures, known as Series 1 and Series 5, were organized for the exploration and production of oil and gas by the Hanover Planning Company, Inc. (Hanover) a wholly owned subsidiary of Hornblower & Weeks-Hemphill, Noyes (Hornblower). We affirm the grant of summary judgment to the appellees.

Hanover was organized in March, 1969, by Hornblower to arrange and manage, as agent, a number of joint ventures through which customers of Hornblower could participate in the exploration for oil and gas. Appellees were, at all relevant times, either general partners of Hornblower or officers of Hanover. Appellants Clarence and Dorothy Bennett are husband and wife, and appellant National Standards Association, Inc. is a corporation wholly owned by the Bennetts.

The complaint alleged five basic misrepresentations and one omission which were claimed to constitute fraud. Three of the misrepresentations related to the offer of units in Series 1: (1) The risk in such ventures would be minimized because a major portion of the investment would be devoted to those areas in which there were successful oil drilling operations. (2) Only a small portion of the investment would be used for wildcat drilling. (3) Within two or three years following the purchase of the units in Series 1, the investor would be provided with the opportunity for liquidity by means of an exchange offer of the units for shares in an established and well-known oil company, such as Mesa Petroleum.

Two misrepresentations and an omission were claimed as to the sale of units in Series 5: (4) A memorandum directed to all participants in Series 3, a similar venture, had attached to it a schedule showing income projections from existing Series 3 properties. This memorandum allegedly was used as a factual basis for the projected performance of Series 5 and as an inducement for appellants' purchase of units in Series 5. Moreover, the projections for Series 3 allegedly were false and were known or should have been known by appellees to be false at the time the projections were made. (5) In negotiating the sale of units in Series 5, the sales representative stated that appellants' initial investments would be returned to them before Hornblower received anything.[1] (6) No disclosure was made during the sale of Series 5 to appellants of the fact that the partners of Hornblower had already planned or were contemporaneously planning to alter the capital structure of Hanover and then to offer to exchange stock in Hanover for units in the various Series as a means of

---

[1]. Because appellants' complaint makes this allegation with respect to the sale of units in Series 5, we treat it as such. We note, however, that appellants' briefs treat the representation as having been made with respect to the sale of Series 1. The deposition of Robert Menzel, Hornblower's sales representative, also suggests, although ambiguously, that it was made with respect to Series 1.

providing the liquidity to the investors mentioned in (3) above. This belatedly disclosed plan allegedly resulted in appellees profiting inordinately at the expense of investors in the various Series.

The first two alleged misrepresentations were contained in the prospectus for Series 1. The third, according to appellants, was made by Robert Menzel, a registered representative employed by Hornblower, when he was persuading appellants to buy units in Series 1. As to the fourth, the memorandum on Series 3 was prepared by Hornblower to describe recommended development work on property interests owned by the Series 3 drilling program. The memorandum was generally available in the Hornblower offices at the time appellants were there deciding whether to invest in Series 5. The fifth allegation, regarding Hornblower's compensation, was a representation claimed to have been made in connection with Menzel's sale of Series 5 units to appellants. Finally, the claimed omission during the sales pitch for Series 5 units was a conclusion by appellants based on the overall advantageous effect to appellees of the concluded exchange offer.

■ After extensive pretrial discovery and oral argument on the cross-motions for summary judgment, the trial court concluded that there were no genuine issues as to any material facts and accordingly granted summary judgment to appellees. This court's function on the appeal of a grant of summary judgment is to determine whether any material factual issue exists. Super.Ct. Civ.R. 56(c); *Dewey v. Clark*, 86 U.S.App. D.C. 137, 143, 180 F.2d 766, 772 (1950). Viewing the record in the light most favorable to the opposing party, *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), we are satisfied that there are no disputed material factual issues bearing on the existence of the alleged fraud. Accordingly, summary judgment was properly granted appellees. *See International Underwriters, Inc. v. Boyle*, D.C. App., 365 A.2d 779 (1976).

The parties failed to include in the record on appeal their respective statements of material fact as to which there is no genuine issue. Such statements were required to be filed in the trial court in conjunction with the motions for summary judgment. *See* Super.Ct.Civ.R. 12–I(k). For purposes of our review, those statements were a necessary part of the record on appeal. We ordered them included as a supplemental record. *See* D.C.App.R. 10(*l*). Our examination of the record has been made in light of these statements. We may not consider unsupported contentions of factual dispute contained elsewhere in a memorandum filed in opposition to summary judgment. *See Dillard v. Travelers Insurance Co.*, D.C. App., 298 A.2d 222, 224 (1972); *Kron v. Young & Simon, Inc.*, D.C.App., 265 A.2d 293, 295 (1970). A material factual dispute must be pleaded as required by Super.Ct. Civ.R. 12–I(k) and 56(e).

■ Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit. *See* Super.Ct. Civ.R. 9(b). *Zoslow v. National Savings & Trust Co.*, 91 U.S.App.D.C. 391, 201 F.2d 208 (1952); *Wynne v. Boone*, 88 U.S.App.D.C. 363, 191 F.2d 220 (1951). The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. *United States v. Kiefer*, 97 U.S.App.D.C. 101, 228 F.2d 448 (1955), *cert. denied*, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815, *rehearing denied*, 350 U.S. 977, 76 S.Ct. 431, 100 L.Ed. 847 (1956); *Rosenberg v. Howle*, D.C. Mun.App., 56 A.2d 709 (1948); *Sankin v. 5410 Connecticut Avenue Corp.*, 281 F.Supp. 524 (1968), *aff'd sub nom. Benn v. Sankin*, 133 U.S.App.D.C. 361, 410 F.2d 1060 (1969), *cert. denied*, 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970). Nondisclosure or silence, as well as active misrepresentation, may constitute fraud. *See St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 412 F.Supp. 45 (E.D.Mo. 1976). One pleading fraud must allege such facts as will reveal the existence of all the

requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient. Applying these standards to the record, we cannot say that the conclusion of the trial court finding no genuine issue as to material facts bearing on fraud was error.

On the undisputed facts, no representations or omissions in connection with appellants' purchases of units in the Hanover drilling funds were fraudulent. Fraud could only be discerned, if at all, by means of impermissible speculation. On deposition, Clarence Bennett admitted that the first two representations claimed to be fraudulent were not false.[2] Moreover, any lack of financial success of Series 1 was warned against in the Series 1 prospectus which noted:

> The business of exploring for and producing oil and gas is highly speculative and involves risk of loss. . . . Therefore, there can be no assurance that the Program will be a success financially or that moneys invested by the participants will be recouped. In view of the foregoing, and the impact of Federal tax laws, the offering of the Units is directed primarily to persons whose income is subject to Federal income taxes at high rates. . . .

In light of appellants' admissions and the disclosed speculative nature of oil ventures in general, there is no genuine issue as to the first two allegations.

As to the third alleged misrepresentation, Hornblower's sales representative, Robert Menzel, stated on deposition that it was his estimate, and it was an estimate given to him, that within approximately three to five years an attempt would be made to convert the units to a going operation which would make the interests negotiable. No trial is necessary to determine whether this representation promised mere liquidity or whether it promised liquidity via stock in an established oil company—the latter apparently foreclosing by implication Hanover stock as the vehicle for liquidity.

A promissory representation, or a representation as to future events asserted in a common law fraud action, should only be considered a misrepresentation of fact where the evidence shows that the promise

---

2. The concession as to the truth of the statement that most of the drilling for Series 1 was to be done in areas which were currently successful was as follows:

By Mr. Connick:.

Q. "Is it your contention that the major portion of the investment in Series 1 was not devoted to those areas in which there were currently successful oil drilling operations?"

A. "I am not contesting that at all. What I am contesting is the fact that we were not getting back what was represented to us that we would get back."

\* \* \* \* \* \*

Q. "I will get to that. I am just interested in this one sentence. You don't claim that it is false?"

A. "No, I don't claim it's false." [Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment.]

The concession as to the truth of the statement that little wildcatting would be done in Series 1 was as follows:

By Mr. Connick:

Q. "Going on on page 5 [of the complaint] and I quote: 'Mr. Menzel further explained to Plaintiffs that only a small portion of such investment [in units of Series 1] would be utilized for speculative or "wild-cat" drilling.' "

A. "That's essentially what is put in the prospectus."

Q. "You don't maintain at this point that that was a false statement?"

A. "No." [Id.].

Appellants, attempting to escape the consequences of these concessions made by Clarence Bennett, sought to have stricken from the record on appeal all references to the appellants' depositions. These references are contained in appellees' memorandum of points and authorities and other pleadings filed in the trial court. However, this court on March 12, 1976, ordered that these references not be stricken from the record on appeal. We see no reason to question the correctness of that order. There appeared to have been a failure to file the depositions. The accuracy of them is not challenged. Appeals No. 10351 and No. 10546 are consolidated with the main appeal, No. 10089, and involve a challenge to the use of this plaintiff's deposition. We deem the deposition properly to be a part of the record on appeal.

was made without the intent to perform, or that the promisor had knowledge that the events would not occur. *See United States v. Grayson*, 166 F.2d 863 (2d Cir. 1948). *See also Day v. Sidley & Austin*, 394 F.Supp. 986 (D.D.C.1975). When a person positively states that something is to be done or is to occur, when he knows the contrary to be true, the statement will support an action in fraud. On the other hand, a prophecy or prediction of something which it is merely hoped or expected will occur in the future is not actionable upon its nonoccurrence. *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *People's Furniture & Appliance Co. v. Healy*, 365 Mich. 522, 113 N.W.2d 802 (1962).

Nothing in the record establishes or suggests that the third representation was made without the intention to perform or with the intention to mislead or deceive. *See Ferland v. Orange Groves of Florida, Inc.*, 377 F.Supp. 690, 706 (M.D.Fla.1974). Appellants averred no admissible evidence to put this issue in disputed factual context. A mere allegation in an unverified complaint is not enough. *See Dillard v. Travelers Insurance Co., supra* ; Super.Ct.Civ.R. 56(e).

Moreover, the representation is nothing but a prediction of a hoped-for or expected future occurrence rather than a positive representation of a specific arrangement. Also, according to the undisputed facts, an attempt was made to arrange an exchange offer with General Exploration Company of California. However, the terms were deemed unattractive by Hanover. Subsequently, liquidity was made available to appellants by means of the exchange offer of Hanover stock—an offer appellants refused.

As to the fourth allegation, no proof was presented that the Series 3 projection was a representation as to the performance of Series 5. It is clear from the record that at the time appellants purchased Series 5 units, Series 5 had no properties and no projection of Series 5 performance could have been made. On deposition, Clarence Bennett admitted that there was no representation by Robert Menzel that Series 5 would be as successful as Series 3 and he conceded that Menzel could not say anything in this regard. Under the circumstances, the Series 3 projection cannot be viewed as creating a factual issue respecting fraudulent inducement to purchase Series 5 stock. We think this is the case even with the additional factor that actual production in Series 3 turned out to be far less than the projected amounts.

The alleged misrepresentation as to the return of the initial investment (the fifth assertion) was not claimed to have been relied upon by appellants. *See Price v. Griffin*, D.C.App., 359 A.2d 582 (1976). Moreover, the statement was in addition to and in contradiction of the terms of the prospectus which explicitly stated:

Hornblower will receive from the Company as a commission for its services as agent in the offering of Units in the Fund (i) a cash commission in an amount equal to 3½% of the aggregate Investment Moneys paid to the Company in respect to all Units sold by Hornblower and (ii) a part of the Company's Overriding Royalty . . . . [Series 5 Prospectus, at 2 and 18.]

The evidentiary weight of this statement is supplemented by the disclaimer in the prospectus as to representations other than those contained in the prospectus itself. Upon these facts, there is no issue as to whether appellants, as experienced investors, were fully apprised of compensation accruing to Hornblower.

Finally, appellants fail to set forth facts which create an issue as to when Hanover decided to offer its own shares to participants in its drilling funds. Since no evidence in the record indicates plans for an exchange offer involving Hanover stock until after plaintiffs bought units in Series 5, it could not be concluded that an omission amounting to fraud resulted with respect to the sale of Series 5 which can be deemed fraudulent. A statement by William West, onetime president of Hanover, respecting whether the specific Hanover exchange was

contemplated as early as 1969, is ambiguous at best. His affidavit denying such early contemplation of an exchange of Hanover stock more than offsets the ambiguity raised by his earlier comment. Without more, no triable issue of fact was presented.

The absence of material issues as to the existence of representations or omissions which would amount to fraud makes it unnecessary for us to consider whether to attribute the representations and omissions to appellees. We also note that although appellants' complaint did not include a claim of breach of fiduciary duty, appellants make such a claim on appeal. However, even if we assume the existence of a fiduciary relationship between the parties, no specific facts—aside from bare allegations—have been set forth by appellants which show a genuine issue as to whether a fiduciary duty has been breached. As discussed above, the facts presented indicate no misstatements or omissions concerning the subject matter of the sale of units and the exchange offer.

Accordingly, the grant of summary judgment to appellees is

*Affirmed.*