Robert N. Meiser, Washington, D.C., for plaintiff.

Dana L. Scott, Jr., Doherty, Sheridan & Grimaldi, Thomas D. Quinn, Jr., Jack M.H. Frazier, Reasoner, Davis & Fox, Washington, D.C., for defendant.

## SUPPLEMENTAL PRETRIAL ORDER

OBERDORFER, District Judge.

### I.

A September 30, 1986 Memorandum and Order (copy attached) stated the facts of this case as they had developed at that time and granted the University's motion to dismiss counts 1, 2 and 3 in plaintiff's complaint because they were time barred. The order denied the University's motion to dismiss count 4 which alleged that the Board of Trustees violated the University's Faculty Code when it failed to adopt the recommendation of the Appeals Panel of the Grievance Committee that plaintiff be promoted to professor even though neither the Faculty Personnel Committee, the Hearing Committee of the Grievance Committee nor the Appeals Panel had determined that plaintiff merited promotion. It is the essence of plaintiff's position on count 4 that when the Grievance Committee and the Appeals Panel recommend promotion of a person to professor, the Board is obligated to authorize the promotion. Plaintiff relies on the alleged fact (assumed to be true solely for the purpose of this pending motion) that in the past the Board has uniformly approved the promotion recommendations of the Hearing Committee which have been approved by the Appeals Panel.

Defendant's motion on this issue must prevail on the authority of the Faculty Code provision that:

> When ... the appeal process has been completed and a final decision has been rendered, the record of the case, including the decisions of the Hearing Committee and the Grievance Committee, shall be transmitted to the President and the Board of Trustees for final disposition.

Faculty Code, Procedures for the Implementation of the Faculty Code, E.5. at 26.

Nicholas **KYRIAKOPOULOS**, Plaintiff,

v.

The **GEORGE WASHINGTON UNIVERSITY**, Defendant.

Civ. A. No. 86–0765.

United States District Court, District of Columbia.

April 9, 1987.

The only plausible construction of this provision is that it contemplates that the Board will make the final decision, informed, but unfettered, by the decisions of the subordinate committees. The Hearing and Appeals Committees are authorized only to hold hearings, and provide a report and recommendation. Faculty Code, sections E.3.c.8 and E.4.d. Otherwise there would be no reason to send to the Board the record along with the decisions of the committees. Moreover, if the Code intended to reduce the Board to a rubber stamp, the Code would have omitted the Board from the grievance cycle, or used some other word than "disposition" to define its role. Nor does the assumed fact that the Board had approved all previous recommendations of this sort establish that it had allowed its power of "disposition" to atrophy. Indeed, both of the committees observed, and plaintiff recognized in the recent hearings, that this case was unique. Moreover, the Code provided clear authority for the Board's decision not to approve the promotion recommendation presented to it. The Faculty Code specifically requires that "promotions ... shall be made solely on the basis of merit...." Faculty Code, section IV.C. The promotion recommendations conspicuously failed to find that plaintiff merited promotion.

Plaintiff nevertheless persists with the contention that the Board's action in not approving the promotion recommendation was in bad faith. Insofar as this contention relates to the Board's failure to accept the recommendation of the Grievance Committees, it is frivolous. The Board has no legal duty to approve automatically the recommendation of the Grievance Committees. Insofar as the contention relates to the action of the Board in remanding the matter to the Faculty Personnel Committee, the contention is the subject of counts 5 and 6 of the amended complaint discussed below. The fact that on one occasion more than 10 years ago the defendant promoted to professor a faculty person, Ms. Bielski, who had been the victim of legally cognizable sex discrimination without a finding that she merited promotion is not material evidence that the Board's decision here was either discriminatory or in bad faith.

Count 4 fails to state a claim on which relief can be granted. Accordingly, an accompanying order will grant defendant's motion for a summary judgment dismissing count 4 of the amended complaint.

## II.

Counts 5 and 6 have been the subject of discovery, an exchange of comprehensive pretrial briefs, and three extended pretrial conferences. This effort has yielded a much clearer picture of the contentions of the parties and the extent to which the facts relevant to the issues as so clarified are undisputed. Indeed, it may well be that no material facts remain in dispute so that the controversy can be resolved without a trial.

### A.

Plaintiff's pretrial brief states without contradiction by defendant, among other things, that:

1. A contract has existed between plaintiff and defendant throughout all times relevant.

2. The Code has been and is a key part of the contract.

3. The Code provides that promotions would be made solely on the basis of merit, or at least would not be denied on grounds other than merit.

4. The Code provides that promotions shall be made without regard to unlawful discrimination, that is, without regard to race, color, religion, sex, national origin, or other considerations prohibited by law.

5. The Code provides that each school or college and department shall establish and publish criteria on which promotion will be based.

6. The Code provides that each school, department or college shall establish and publish the procedures followed for making decisions concerning promotions.

7. The Code provides that each department or school shall establish procedures for periodically informing faculty members whether they are making satisfactory progress toward promotion.

8. The School of Engineering and Applied Science and the Department of Electrical Engineering and Computer Science each published written promotional criteria and the Code itself contains such criteria throughout the relevant periods.

Plaintiff's Pretrial Brief at 3–5 (filed February 5, 1987) (citations omitted).

Criteria of the school at which plaintiff taught provided that:

Significant scholarly merit may be evidenced by a single work of considerable importance or by a number of papers published, particularly in refereed journals.

The George Washington University School of Engineering and Applied Science, Criteria for Promotion and Tenure of Faculty and Research Staff at 1. The criteria further provided that:

To qualify for the rank of Professor, a person must possess *outstanding ability and* recognized standing in his field. Although a balance of teaching and research is highly desirable, an outstanding teacher or an outstanding researcher should be equally qualified for this rank.

*Id.* at 2 (emphasis added); *see also* Criteria for Hiring and Promotion of Full-time Faculty in the Department of Electrical Engineering at 3. These criteria plainly require that to be promoted to professor the candidate must be either an "outstanding" teacher or an "outstanding" researcher, preferably both.

Nor is there any material dispute about proffers in defendant's pretrial brief that:

17. In 1971, plaintiff requested a sabbatical leave from defendant. In his request, plaintiff stated that he would spend 50% of his time working on a book that he planned to publish.

18. In 1972, plaintiff was granted the sabbatical, which took place from September 1, 1972 to August 31, 1973.

19. Following his sabbatical, plaintiff stated in his annual faculty report that he had completed 50% of his book.

20. By 1978, seven years after he requested the sabbatical, and justified the request by claiming that he was preparing a book, plaintiff had completed only an outline and three chapters of a twelve chapter book. The remainder, if any, was not in a form to submit for review.

21. To date, plantiff's book is no closer to completion than it was in 1978.

22. Plaintiff has been repeatedly informed, since 1978 and before, both orally and in writing, of his true promotional status. Plaintiff's true promotional status was that he did not merit promotion, and that he could achieve promotion by publishing more articles in refereed journals. [Plaintiff claims that there were other considerations which affected his promotional status but he does not dispute that failure to publish was a consideration stated to him by the University.]

23. As of 1978, plaintiff had published only one article in a refereed journal. That one article consisted of a letter to the editor based almost entirely on the master's thesis of one of plaintiff's students. [In a summary judgment mode, plaintiff's general denial without specific facts would not create a cognizable material dispute.]

24. As of the date plaintiff filed the instant suit, he had not published any additional articles in refereed journals since 1978. [There is a dispute over the definition of a "refereed" journal which may well be resolvable short of trial.]

25. As of the date plaintiff filed the instant suit, he had supervised only one additional doctoral student. [Plaintiff proffers that he did not encourage students to select his supervision because he feared that the anger of his faculty colleagues toward him would be taken out against his students. The fact that over the years plaintiff supervised only one doctoral candidate (for whatever reason) remains undisputed.]

Defendant's Pretrial Brief at 17–18 (filed March 20, 1987) (citations omitted). *Compare* Defendant's Pretrial Brief at 17–18 *with* Reply of Plaintiff to Defendant's Pretrial Brief at 8–9 (filed March 27, 1987). Moreover, plaintiff himself admits that

he devoted energies to obtaining additional income from consulting work, as well as, primarily, to securing enforce-

ment of his rights under the Faculty Code through grievance proceedings.

Reply of Plaintiff to Defendant's Pretrial Brief at 9.

The persistent concern of defendant about plaintiff's failure adequately to publish is further evidenced by the November 11, 1985 Memorandum of Professor R.H. Lang, Chairman of the department, advising plaintiff of the decision of the 1985 Faculty Personnel Committee to which the Board of Trustees had remanded plaintiff's application for promotion and informing plaintiff of his progress toward promotion:

> I regret to inform you that the Committee felt that your record did not merit the requested promotion. You have the ability to merit promotion to full professor, and I would be optimistic of your future promotion if your record were improved by completion of your book and/or establishing a significant record of refereed publications.

It is thus undisputed that neither the Board nor any committee which has considered plaintiff's application for promotion has found him to be either an "outstanding" teacher, or an "outstanding" researcher. Moreover, defendant has proffered the testimony of the members of the committees that have considered plaintiff's qualifications to the effect that each of the committees determined at the time they acted that plaintiff was not "outstanding" in either of the critical areas.[1] There are undisputed items of substantial evidence that support these opinions of the committees. Obviously, if the criteria require promotion solely on merit, if merit requires the promotee to be either an outstanding teacher or an outstanding researcher, if none of the

relevant committees have found him to be either, and if a decision of a committee supported by substantial undisputed evidence is to be honored in court, and if there is no evidence (or no clear and convincing evidence) of "gross arbitrariness," his remaining claims appear vulnerable to dismissal as a matter of law. *See Williams v. Howard University*, 528 F.2d 658, 661 (D.C.Cir.1976) and pp. 1529–30 *infra*.[2]

#### B.

It is plaintiff's essential position, however, that he should not have been judged by the written criteria, but by the criteria as they have been actually applied over the years to other promotees. He points to the observation of the Hearing Committee of the Grievance Committee that the department had failed to adopt and publish its procedures concerning promotion decisions, and that although its evaluation may have been conducted with good intention, it failed to use established and published criteria and thereby evaluated him arbitrarily.[3]

Significantly, however, plaintiff does not claim that he should have been, or should now be, evaluated according to the written criteria. He contends that he should have been and should now be evaluated by comparison with others who have been promoted: Professors Meltzer and Eisenberg. He has conspicuously omitted reference to others who have been promoted or denied promotion. It is his theory that the actual *de facto* criteria can be ascertained by extrapolating them from the qualifications of those two professors. Thus, to redress the allegedly erroneous application of the *de*

1. Although there are no contemporaneous written findings by the Faculty Personnel Committees as to whether plaintiff was outstanding, retrospective testimony about the findings and conclusions of the Committees are probative. *Compare Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

2. The parties may wish to frame these issues before trial by properly supported cross-motions for summary judgment.

3. The Report of the Hearing Committee states specifically that:

> The Hearing Committee finds that while the Personnel Committee's evaluation of the candidate may have been conducted with good intention, it failed to employ established and published criteria, and failed to use established and published procedures. Accordingly, the grievant's contention that he was evaluated arbitrarily is supported by the testimony in this hearing; it is not clear the evaluation was capricious. Nevertheless, the Hearing Committee supports the essence of the grievant's contention.

Report at 9 (emphasis omitted).

*facto* criteria, plaintiff would submit to a decision by a jury the ultimate questions of whether (1) the operative criteria are those determined by the foregoing process of comparison and, if so, (2) whether plaintiff met those *de facto* criteria.

There are, or should be, serious doubts about turning over to a jury (or, for that matter, to a federal court) responsibility for extrapolating the criteria for promotion to professor from the profiles of some (but not all) who have been considered for professorships over the past 10 or 15 years, and determining whether a particular academic, or in this case the plaintiff, is more or less qualified to be a full professor than are some others. In a constitutional context, judges have vigorously and successfully resisted such efforts of disappointed academics to "convert federal courts into 'Super-Tenure (and Faculty Promotion) Review Committee(s).'" *See Clark v. Whiting*, 607 F.2d 634, 638 (4th Cir.1979) (quoting *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264, 1270 (M.D.Pa.1976)). For as well stated by another district court, quoted with approval by the *Clark* court:

> The judiciary is not the appropriate forum for decisions involving academic rank. A professor's value depends upon his creativity, his rapport with students and colleagues, his teaching ability, and numerous other intangible qualities which cannot be measured by objective standards.

*Lewis v. Chicago State College*, 299 F.Supp. 1357, 1359–60 (N.D.Ill.1969) (quoted with approval in *Clark v. Whiting*, 607 F.2d at 639 n. 10).

Indeed the *Clark* case has remarkable parallels with this one. There the university in question was a state institution which required that a candidate for a full professorship give "concrete evidence of continued growth by scholarly contributions of [sic] his field." *Id.* at 637. The plaintiff in that case had failed promotion on two occasions because he had "failed to meet the publication requirements." *Id.* He claimed violation of his constitutional right to equal protection "on the alleged failure of the defendants to apply the same standards in evaluating his qualifications for promotion and his 'scholarly achievements'

as were used 'in the past' in passing on promotions of other faculty members." *Id.* at 638.

Here, undisputed facts may well dispose of the case. The University has proffered testimony of Faculty Personnel Committee members that the promotions of each of the promotees cited by plaintiff were based on findings of either outstanding research achievements or outstanding teaching performances. These findings were in contrast with the committees' conspicuous failure to find that plaintiff was an outstanding teacher and with their explanations that his failure either to complete his book or produce refereed publications had, up to now, prevented their finding him to be an outstanding researcher.

### C.

There remains plaintiff's charge that the decision of the Faculty Personnel Committee was animated by hostility and was a reprisal for his tenacious pursuit of his grievances. Plaintiff does not allege that he was discriminated against because of his race, sex, or religion. As pointed out above, our Court of Appeals has indicated in a related context that to obtain relief in a private university setting, a plaintiff denied promotion to full professor must show "gross arbitrariness." *See Williams v. Howard University*, 528 F.2d 658, 661 (D.C.Cir.1976). In addition, the plaintiff's allegations of bad faith and evil motive may fairly be described as the functional equivalent, in an academic environment, of a fraud claim which must be pleaded with particularity, *see* Fed.R.Civ.P. 9(b), and, in the District of Columbia as elsewhere, must be proved by clear and convincing evidence. *See, e.g., Pyne v. Jamaica Nutrition Holdings Ltd.*, 497 A.2d 118, 131 (D.C.App.1985); *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.App.), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *see also Beardshall v. Minuteman Press Intl.*, 664 F.2d 23 (3d Cir.1981); *Ajax Hardware Mfg. Corp. v. Industrial Plants Corp.*, 569 F.2d 181 (2d Cir.1977). It is instructive to note that in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court es-

tablished a federal rule requiring a public figure suing for libel to prove "actual malice" with "convincing clarity." 376 U.S. at 279–80, 285–86, 84 S.Ct. at 728–29. A case challenging the exercise of tenure prerogatives by a private university partakes of characteristics similar to those which persuaded the Supreme Court to require a public figure plaintiff in a libel suit to carry an enhanced burden of proof. Indeed, it appears that the Faculty Code as interpreted by the Appeals Panel requires plaintiff to prove "by clear and convincing evidence that the [defendant's] action with respect to him had been arbitrary and capricious" in order to gain administrative relief. *See* Opinion of the Appeals Panel of the Grievance Committee at 4; *see also id.* at 7. Thus, it may well be, or should be, the law that a contract claim that an academic promotion decision was in bad faith should only go to trial upon a proffer of evidence which would establish "gross arbitrariness" with "convincing clarity"—i.e., by clear and convincing evidence.[4]

### D.

It may develop that plaintiff has no standing to complain of alleged irregularities in the 1985 remand proceedings. At the third pretrial conference, plaintiff was questioned whether he had a right to the remand granted to him by the University's Board of Trustees. Plaintiff answered that he did have such a right because his contract entitled him to have his application for a promotion judged on the merits, and no such judgment had been made in the K–3 proceedings.

In the K–3 proceedings, however, one of plaintiff's two claims was that "my record as of 1978 meets the criteria for promotion and therefor I should be promoted as of

that date." Report and Recommendation of the Hearing Committee at 2; Opinion of the Appeals Panel of the Grievance Committee at 6. This issue was addressed and decided. As stated by the Appeals Panel,

> The Hearing Committee found that Grievant's contention that he merited promotion in 1978 could neither be supported nor denied. Under the applicable precedent, to win on this ground, Grievant had the burden to prove by clear and convincing evidence that his record was so strong that denial of promotion was arbitrary. He did not sustain that heavy burden. If Grievant has a claim to relief it is for defects in the manner in which the non-promotion decision was reached.

*Id.* at 7. It thus appears that plaintiff presented to the Hearing Committee his case that he merited promotion but failed to carry his burden of proof.

Furthermore, plaintiff's argument that the purpose of the remand was to provide him with his right under the contract to a determination on the merits of his 1978 application for promotion is undercut by the terms of the remand order itself. The letter of remand from the Board of Trustees stated that the inquiry on remand should be whether plaintiff "merits" promotion, and that plaintiff should be permitted at the hearing "to bring his qualifications up to date." (Emphasis added.) The use of the word "merits" in the present tense supports an argument that the Trustees envisioned that the hearing would determine whether plaintiff merited promotion in 1984 based on his 1984 record.

Given the findings of the Grievance committees, and the fact that the Board of Trustees apparently envisioned a rehearing on whether plaintiff merited promotion in 1984, not 1978, it may well be that plaintiff

---

4. *See Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.").

The University may discover that it is in its interest and that of universities generally to seek protection under the First Amendment for its academic freedom to select and give tenure to faculty by a rule which would impose such

an enhanced burden of proof upon a faculty member who challenges a faculty promotion decision "by resorting to the 'I'm just as good as you are' arguments" coupled with allegations of bad faith by the university. *See Clark v. Whiting,* 607 F.2d at 638; *see also Dartmouth College v. Woodward,* 4 Wheat. (17 U.S.) 518 (1819). Defendant may wish to consider inviting other universities to request permission to enter an appearance as *amicus curiae,* and plaintiff may wish to consider inviting faculty members or organizations of them to do likewise.

did not have a contract right to the remand by the Board of Trustees, and that the remand was a matter of courtesy, not of right. On this theory, if the Board had simply rejected the recommendation of the Appeals Panel, that would have been the end of the matter. Under the circumstances, it may be that plaintiff has no standing to complain about the alleged inadequacy of the relief gratuitously afforded to him. *See Clark v. Whiting*, 607 F.2d at 642–45, where the court, in a constitutional due process context, held that a hearing which was afforded to a disappointed professor by the Board of Trustees did not have to conform to the criteria of a complete due process hearing, and that plaintiff's rights at the hearing "unquestionably could not go beyond the right to know the ground for denial of promotion and an opportunity to present his reasons for feeling he was entitled to promotion." *Id.* at 645.

### E.

During the pretrial conferences defendant's counsel indicated that either at the close of the evidence or at the close of plaintiff's case, he expected to move for a directed verdict and thereby protect the defendant from surrender to a court and jury the University's arguably constitutionally protected prerogatives with respect to promotions to tenured positions. But, as the Supreme Court has recently emphasized: the standard for determining whether to direct a verdict "mirrors" the standard for ruling on a motion for summary judgment. *Anderson*, 106 S.Ct. at 2511. *In accord Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944). In determining whether to grant a motion for a directed verdict if the case goes to trial, or in determining whether to grant a motion for summary judgment, should one be filed, it appears at this time that the ultimate issue to be resolved is whether plaintiff has offered (if the case goes to trial) or has proffered (if the case is at issue on a motion for summary judgment) evidence which would persuade a reasonable jury that defendant acted in bad faith (1) when its Board of Trustees refused to adopt the recommendation of the Grievance Committees and in-

stead remanded plaintiff's claim to the Faculty Personnel Committee and (2) when the Faculty Personnel Committee decided in 1985 that plaintiff was neither an outstanding teacher nor an outstanding researcher and counseled him to publish either his aborted book or more refereed publications.

The exchange of pretrial briefs and the several pretrial hearings yield the undisputed facts that (1) the defendant created opportunities for plaintiff to complete a book, and that he may well have the capability to publish a substantial quantity and quality of refereed articles, (2) the plaintiff has not done either, and (3) during the time when he could have published, he chose instead to engage in an income producing consulting practice and vigorously to prosecute grievances about defendant's failure to promote him. *Compare McConnell v. Howard University*, 621 F.Supp. 327, 331 (D.D.C.1985). (There plaintiff unsuccessfully contended that he should have been excused for his failure to meet his professional responsibilities (teaching the class assigned to him) because he was attempting to meet another professional responsibility (preserving professorial authority).) It is also undisputed that the Grievance Committee whose decision plaintiff claims should have been affirmed by the Board conspicuously did not find that the Faculty Personnel Committee acted in bad faith but rather found that its "evaluation of [plaintiff] may have been conducted with good intention." Report of Hearing Committee at 9 (emphasis omitted). The plaintiff's proffered evidence about hard feelings within plaintiff's department and retaliation may be demonstrated to be neither material nor clear and convincing evidence of gross arbitrariness.

In the face of these facts, it may well be that even before trial defendant can establish that the ultimate issue for decision is whether plaintiff can establish "gross arbitrariness" with "convincing clarity" and that a reasonable jury could not find that there is clear and convincing evidence that the defendant has acted in bad faith in denying plaintiff a promotion until he enhances his record of publication. If so, this matter may, after all, be susceptible to resolution by application of simple princi-

ples of law (e.g., whether a reasonable jury might find that bad faith had been shown with convincing clarity) to undisputed material facts. *Compare Anderson*, 106 S.Ct. at 2515. In that event, the scheduled trial would be an unnecessary intrusion on the academic process.

Accordingly, an accompanying order will permit each party to show by April 21, 1987, why he (or it) is entitled to summary judgment on counts 5 and 6. Cross-oppositions will be due May 1, 1987.

## ORDER

For reasons stated in an accompanying supplemental pretrial order, it is this 9th day of April 1987, hereby

ORDERED: that defendant's motion for summary judgment on Count 4 of plaintiff's amended complaint should be, and hereby is, GRANTED; and it is further

ORDERED: that each party may show by April 21, 1987, why he (or it) is entitled to summary judgment on counts 5 and 6. Cross-oppositions will be due May 1, 1987.

## ATTACHMENT

## MEMORANDUM AND ORDER

Plaintiff is an associate professor at the George Washington University School of Engineering and Applied Science. He filed a Complaint on March 21, 1986, for breach of contract and defamation, arising out of the University's repeated refusal to promote him to full professor. Defendant filed a motion for summary judgment on August 29, 1986, arguing that plaintiff's claims are barred by the statute of limitations. For the reasons stated below, defendant's motion for summary judgment is granted in part and denied in part.

Plaintiff obtained a faculty position at the University in 1964. He was promoted to the position of associate professor in 1970 and simultaneously granted tenure. He subsequently applied for, but was denied, promotion to full professor in 1973, 1974, 1975, 1976, 1977 and 1978. Plaintiff did not contest the first two denials, but subsequently initiated grievance proceed-

ings to review the denials in 1975 and 1976. These denials were affirmed by a hearing committee in 1977, and upheld on appeal in 1978.

Plaintiff appealed the 1977 promotion denial under the same procedures. Hearings were held in 1978 and 1979, and the denial was again affirmed.

Plaintiff learned of the 1978 promotion denial in the fall of 1978. He received formal notification of the denial by letter dated April 1, 1979. He initiated grievance proceedings in June 1979, but these proceedings were stayed pending the outcome of a special mediation effort by the faculty senate. This effort proved unsuccessful, and plaintiff renewed his request for grievance proceedings in November 1981. Hearings concluded in April 1983. The Hearing Committee recommended that plaintiff be promoted to full professor for the academic year 1983–84, though it declined to find that plaintiff merited this promotion. The Committee's recommendation was affirmed by the Appeals Panel of the Senate Grievance Committee, although it too failed to find that plaintiff merited promotion. On June 21, 1984, the University Board of Trustees voted to remand the matter for a determination of whether plaintiff was qualified for a promotion to full professor as of 1978. On November 6, 1985, the Personnel Committee of the Department found that he was not, and denied promotion. Plaintiff then filed this suit.

Although plaintiff's complaint is ambiguous, it appears to allege that defendant breached its contract with plaintiff by denying him promotion in 1976, 1977 and 1978, and by refusing to follow the 1983 promotion recommendation of the Appeals Panel. Plaintiff also alleges that the failure to promote him injured his reputation. He demands approximately $4 million in compensatory and punitive damages.

Defendant argues that these claims are barred by the three-year statute of limitations applicable to contract actions, 12 D.C. Code § 301(7), and the one-year statute of limitations applicable to actions for libel or slander. 12 D.C.Code § 301(4).[1] Accord-

---

1. In case the one year statute does not apply, defendant says the injury to reputation claim is

still barred by the three year statute of limita-

ing to defendant, plaintiff's causes of actions accrued when he discovered that he had been denied tenure, in 1976, 1977 and 1978. *See Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Because it has been more than three years since the last cause of action accrued, defendant argues that plaintiff's claims are barred.

Plaintiff responds that "the statute [of limitations] was necessarily tolled [by the grievance proceedings] or the defendant is estopped under the widely accepted rule in employment and other cases that requires a plaintiff to exhaust his contractual remedies for settling disputes before even commencing an action for breach of the contract involved." Opposition to Motion for Summary Judgment at 2.[2]

Recourse to contractual remedies, however, does not automatically toll the statute of limitations. In *Fitzgerald v. Seamons*, 553 F.2d 220 (D.C.Cir.1977), the court held that the statute was not tolled by the plaintiff's initiation of nonjudicial remedial proceedings. The court wrote:

> Since appellant had the option to bring an action for the harm done to him by appellees concurrently with his recourse to the CSC [Civil Service Commission], he cannot now untimely invoke the judicial remedy because the administrative one does not make him whole. The choice of whether to pursue one remedy or the other, or both, may be difficult, but Fitzgerald had the choice, and was not barred from the damages action by an exhaustion requirement. There was no guarantee that the CSC route would be successful, speedy, or complete. But the administrative and judicial remedies were independent. And the limitations period ran on the judicial remedy independently of the CSC proceeding.

553 F.2d at 226–27. *See also Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period. The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.") (citations omitted).

Plaintiff argues that *Fitzgerald* is inapposite because in *Fitzgerald* the plaintiff "had the choice to pursue one remedy or the other," while plaintiff here was required to pursue his administrative remedies prior to initiating civil proceedings. To demonstrate that University grievance proceedings were mandatory, plaintiff cites Section X of the George Washington University Faculty Code ("Code"), which states:

> The rights, privileges, and responsibilities of a faculty member conferred by this Code shall be carefully safeguarded in accordance with the highest principles, practices, and procedures of the academic community. An alleged infringement of such rights and privileges or an alleged violation of such responsibilities, or a charge of unfair or discriminatory treatment based on race, color, religion, sex, national origin, or other considerations prohibited by law with regard to conditions of employment *shall* first be considered by the faculty member or members concerned, or by appropriate representatives of the faculty, in cooperation with the responsible administrative officers. *If such consideration does not lead to an adjustment satisfactory to the parties involved, the procedures for the implementation of the Article shall be fully utilized.*

Code Section X (quoted in Opposition to Motion for Summary Judgment at 4) (emphasis added by plaintiff).

Plaintiff's argument is not persuasive. As the Court reads Section X of the Code, it makes action in conformity with the pro-

---

tions under 12 D.C.Code § 301(8), which applies to any cause of action "for which a limitation is not otherwise specially prescribed."

**2.** The authorities relied upon by plaintiff for the proposition that he was required to exhaust his administrative remedies prior to initiating suit are inapposite. They all concern exhaustion requirements under a collective bargaining agreement and are based on federal labor policy. Plaintiff here is not covered by the NLRA and federal labor policy is not implicated.

cedures mandatory; it does *not* make invocation of those procedures mandatory.

Furthermore, the Code contains no suggestion that its contractual remedies shall be exclusive. Nothing expressly limits plaintiff's right to initiate judicial proceedings.[3]

Even if Section X does mandate grievance proceedings, it makes only the preliminary procedures mandatory. Section E(3)(a)(1) of the Code states that:

> If the preliminary proceedings do not result in a mutually satisfactory resolution of the dispute, any party to the dispute *may* commence formal proceedings....

In this case, preliminary proceedings for all three promotion appeals (1976, 1977, 1978) had ended by November 1981. The statute bars these claims.

It is, of course, highly desirable that academic disputes be settled through University grievance mechanisms. Administrative remedies should be exhausted before resort to the courts is permitted. However, the Court of Appeals in *Fitzgerald* has plainly suggested that administrative remedies need not be exhausted in a case of this nature, and that the statute of limitations is not tolled by resort to such procedures.

Failure to toll the statute of limitations will not necessarily preclude a person from initiating grievance proceedings and then a civil suit. Plaintiff's challenges to his 1976 and 1977 promotion denials concluded in 1978 and 1979 respectively. In both instances, plaintiff could have filed suit after the grievance proceedings and still be within the three year statute of limitations.

On the other hand, exhaustion of administrative remedies may take so long that tolling the statute of limitations would defeat the statute's purpose. In this case, for instance, plaintiff's appeal of his 1978 promotion denial did not conclude until November 1985—seven years after the cause of action accrued. Although the evidence has been well preserved, this will not be true in all cases. And the statute of limitations does not draw distinctions between cases where evidence is preserved and where it is not. The statute applies to both.

The claims of injury to reputation arising from the 1976, 1977 and 1978 promotion denials are also barred. At the latest, those claims accrued in April 1979, when plaintiff received formal notification of his 1978 promotion denial.

Finally, there is plaintiff's contention that the University's refusal to adopt the recommendation of the Appeals Panel is a breach of contract. That alleged breach occurred in 1985. Nowhere does plaintiff point to a contract provision which requires the Board of Trustees to follow the recommendation of the Appeals Panel without inquiring into whether the person to be promoted merits the promotion. Nevertheless, the merits of that claim are not relevant in determining whether it is barred by the statute of limitations. Because the alleged breach occurred within three years of the filing of this action, that claim is not barred under the statute.

For the foregoing reasons, it is this 30th day of September, 1986, hereby

ORDERED: that defendant's motion for summary judgment should be, and hereby is, GRANTED in part and DENIED in part; and it is further

ORDERED: that plaintiff's First, Second and Third Causes of Action should be, and hereby are, DISMISSED; and it is further

ORDERED: that defendant may file on or before October 10, 1986, a motion for summary judgment as to plaintiff's Fourth Cause of Action, and plaintiff shall file an opposition to defendant's motion on or before October 17, 1986; and it is further

ORDERED: that argument on all pending motions shall be held at 9:30 A.M., on October 24, 1986, in Courtroom No. 3.

---

**3.** Plaintiff's ability to seek recourse in court seems particularly clear where, as here, plaintiff seeks remedies that were not available in the grievance proceedings. Plaintiff here seeks damages for breach of contract and defamation. These remedies were not available under the Code.

/s/ Louis F. Oberdorfer
United States District Judge