*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-049

ALVIN HOFF, APPELLANT,

v.

WILEY REIN, LLP, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-8914-12)

(Hon. John M. Mott, Trial Judge)

(Argued January 6, 2015                    Decided February 12, 2015)

*Jolly C. Anaba* for appellant.

*Robert L. Duston*, with whom *Carolyn Due* was on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, FISHER, *Associate Judge*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: Alvin Hoff, formerly an at-will employee at the Wiley Rein law firm, seeks reversal of the trial court's dismissal of his two-count lawsuit against the firm. He claims: (1) "wrongful termination" of his

employment because he refused the firm's demand to violate a criminal law,[1] and (2) "retaliatory discharge" because that refusal, contrary to the direction of his supervisor, was protected by the District of Columbia Human Rights Act (DCHRA).[2] More specifically, appellant Hoff, a former records coordinator for appellee Wiley Rein, claims that he was fired unlawfully because he had not been willing to enhance, and thus falsify, the performance evaluation of another employee at the request of Hoff's supervisor, who allegedly had tender feelings for that employee. Hoff contends that the trial court erred in granting Wiley Rein's motion to dismiss on the ground that he had failed to plead facts sufficient to support either count in his complaint. Perceiving no error, we affirm.

## I.

In reviewing the grant of a motion to dismiss,[3] we take as true the following facts alleged in the complaint.[4] Hoff was employed by Wiley Rein as Coordinator in the Records Department. Among his responsibilities, Hoff drafted periodic

---

[1] *See Adams v. George W. Cochran & Co.*, 597 A.2d 28, 34 (D.C. 1991).

[2] D.C. Code §§ 2-1401.01 to 2-1404.04 (2012 Repl.).

[3] Super. Ct. Civ. R. 12 (b)(6).

[4] Hoff filed his complaint on November 23, 2012. Four days later, he filed an amended complaint, which serves as the basis for the facts set forth here.

performance evaluations for employees in his department. Hoff reported directly to his supervisor, Douglas Smith.

At a meeting with both Hoff and Smith, the firm's Director of Operations, Derek McCleskey, told them both to give Gloria Ward, an employee in the Records Department, an "unsatisfactory" employment evaluation and to "place Ward on 'PIP,'" which we understand to mean a performance improvement plan. After this meeting, Smith made numerous attempts to persuade Hoff instead to give Ward a satisfactory evaluation. When Hoff refused, Smith told Hoff that he must issue a satisfactory evaluation for Ward, "or else." Hoff then set about drafting Ward's evaluation, which took roughly one week to produce, during which Smith "continually pestered" Hoff to issue a satisfactory evaluation. Smith also allegedly entered Hoff's office to "remind" and "threaten" Hoff to "lean easy on [Ward]," because Smith did "not want anyone to be fired."

Hoff's employment evaluation, however, as McCleskey had requested, characterized Ward's performance as "unsatisfactory," and she was "placed on PIP." As a result, Smith was "furious" with Hoff, and on one occasion confronted Hoff in his office "with a few choice words." On March 1, 2011, shortly after Hoff had given Ward her evaluation, McCleskey called Hoff into McCleskey's office

and told Hoff that Ward had accused him of giving her an unsatisfactory evaluation in retaliation for Ward's refusal to lend Hoff money. McCleskey fired Hoff on the spot, informing him that Wiley Rein's human resources department had received documents indicating that Hoff had received loans from Ward in violation of stated policy.

On November 23, 2012, Hoff filed suit, alleging wrongful termination for refusing to falsely certify Ward's performance as satisfactory—a falsity, added Hoff, that would have violated District of Columbia laws prohibiting "fraudulent business activities." Hoff also alleged that Wiley Rein's actions violated the DCHRA.[5] Wiley Rein moved to dismiss the complaint, arguing that Hoff had failed to allege facts sufficient to show that his situation fell within the narrow *Adams*[6] exception barring termination of at-will employment, or that his "unsatisfactory" performance evaluation for Ward, contrary to his supervisor's demand, was a "protected activity" under the DCHRA. Absent a ruling on the motion, the parties proceeded to discovery, which ended in October 2013. Wiley Rein promptly filed a motion for summary judgment.

---

[5] See *supra* note 2.

[6] See *supra* note 1.

Two months later, on December 19, the trial court granted Wiley Rein's pending motion to dismiss and dismissed its motion for summary judgment as moot.[7] The trial court concluded that Hoff had failed to allege facts sufficient to bring his claim within the *Adams* exception to the at-will employment doctrine, and that Hoff had also failed to show that he had been engaged in a "protected activity" under the DCHRA. Hoff filed a timely appeal from the trial court's order.

## II.

## A.

Hoff's notice of appeal failed to include the grounds for seeking relief, and neither in his brief nor at oral argument has he pursued the trial court's dismissal of his retaliatory discharge count under the DCHRA. Accordingly, we consider that

---

[7] The trial court also granted Wiley Rein's motion to strike concerning certain facts that were alleged and certain documents that were attached to Hoff's opposition to Wiley Rein's motion to dismiss. These rulings are not contested here.

issue waived[8] and limit our discussion to Hoff's claim for wrongful termination under *Adams* based on public policy.

We "review an order granting a motion to dismiss *de novo*,"[9] applying the "same standard the trial court was required to apply."[10] We accept the "allegations in the complaint as true" and view "all facts and draw[] all reasonable inferences in favor of the plaintiff[]."[11] All "uncertainties or ambiguities in the complaint must be resolved in favor of the pleader."[12]

---

[8] Under this court's rules, appellant's brief must contain a "statement of the issues presented for review" and the "contentions" and "reasons" that support his or her position. D.C. App. R. 28 (a)(5), (8). Having failed to challenge the trial court's ruling with respect to the retaliation claim, it is waived. *See Long v. District of Columbia Police & Firefighters Retirement & Relief Bd.*, 728 A.2d 112, 116 n.5 (D.C. 1999) (holding that claim first raised during oral argument was waived under Rule 28 for failure to preserve it); *Ramos v. United States*, 569 A.2d 158, 162 n.5 (D.C. 1990) (noting that appellant's failure to brief this court on Fifth Amendment claim constituted Rule 28 waiver of claim).

[9] *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 573 (D.C. 2011) (citing *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1022 (D.C. 2007)).

[10] *Id.*

[11] *Id.* (citing *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 316 (D.C. 2008)).

[12] *Id.* (quoting *Atkins v. Indus. Telecomms. Ass'n*, 660 A.2d 885, 887 (D.C. 1995)) (internal quotation marks omitted).

**B.**

Now, the merits. As a general rule in the District of Columbia, "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."[13] There is, however, "a very narrow exception to the at-will doctrine" on which Hoff relies here.[14] According to this court's decision in *Adams v. George W. Cochran & Co.*, "a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation."[15] Moreover, divisions of this court are not prohibited from "recognizing exceptions to the at-will doctrine in addition to the one adopted in *Adams*."[16]

Apropos of *Adams*, Hoff contends that he was forced to choose between losing his job and violating one of several criminal fraud provisions: D.C. Code

---

[13] *Adams*, 597 A.2d at 30 (D.C. 1991) (citation omitted).

[14] *Id.* at 34.

[15] *Id.*

[16] *Carl v. Children's Hosp.*, 702 A.2d 159, 161-62 (D.C. 1997) (en banc) (Terry, J., concurring).

§ 22-3221 (c) (2012 Repl.) ("false promise as to future performance").[17]  He argues, more specifically, that as "Ward's direct supervisor," he was required by Wiley Rein, "on pain of termination" of his job, to enter a false "promise" or "statement" into "Ms. Ward's permanent employment record, in violation of the plain wording of section 22-3221(c)."  By this he means a false promise or statement that would lead third parties to believe Ward's future job performance would be satisfactory, even though Hoff knew at the time he made that promise or statement that Ward's performance would be sub-par.[18]

In announcing the "primary" rule of statutory construction, this court has said that "the intent of the lawmaker is to be found in the language that he [or she]

---

[17]  (c) *False promise as to future performance*. — Fraud may be committed by means of false promise as to future performance which the accused does not intend to perform or knows will not be performed.  An intent or knowledge shall not be established by the fact alone that one such promise was not performed.

[18]  At least this is what we understand Hoff to be saying.  His brief puts his argument this way: to avoid termination of employment, he was required to make "false promises and statements which [Wiley Rein] intended to be used as reliable indicators by third parties as to Ward's future job performance which, by virtue of Ward's consistently subpar job performance, both Appellant and Appellee knew at that time would not be performed by Ward."

has used."[19]  Thus, we look first "at the language of the statute by itself to see if the language is plain and admits of no more than one meaning . . . ."[20]  Furthermore, "the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them."[21]

The language describing fraud of various sorts can be elusive, but the criminal fraud language of the D.C. Code § 22-3221(c), which has not as yet received definitive interpretation, comes readily into focus not only because its language is reasonably clear but also because it essentially tracks a particular variety of common law fraud—"promissory representation," or a "representation as to future events"—which this court has interpreted in civil cases.[22]  In these decisions, we have said that, for a valid civil claim, the evidence must show that a "promise was made without the intent to perform, or that the promisor had

---

[19]  *In re M.M.D.*, 662 A.2d 837, 845 (D.C. 1995) (alteration in original) (quoting *Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)).

[20]  *Id.* (quoting *Peoples Drug Stores*, 470 A.2d at 753).

[21]  *Peoples Drug Stores*, 470 A.2d at 753 (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979)).

[22]  *Virginia Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs.*, 878 A.2d 1226, 1234 (D.C. 2005) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 60-61 (D.C. 1977)).

knowledge that the events would not occur,"[23] language that essentially has been incorporated into the criminal statute at issue here, § 22-3221(c).[24] Significantly, moreover, we have said in the civil fraud context—and find applicable to criminal fraud as well—that a person who makes an allegedly false promise about future performance must "positively state[] that something *is* to be done or *is* to occur, when he knows the contrary to be true . . . ."[25] A mere "prophecy or prediction of something" that is "hoped" for "or expected to occur in the future is not actionable upon its nonoccurrence."[26]

## C.

With this understanding of the law, we turn to the merits. Recall that Hoff complains that, in order to avoid being fired, he would have had to accede to Wiley Rein's demand that he violate the criminal law, § 22-3221 (c), by preparing a false evaluation of Ward's job performance. In legal effect, he says, this would be a

---

[23] *Id.*

[24] *See* D.C. Code § 22-3221 (c), *supra* note 17 (fraud committed by means of "false promise as to future performance which the accused does not intend to perform or knows will not be performed").

[25] *Virginia Acad. of Clinical Psychologists*, 878 A.2d at 1234 (emphasis added) (quoting *Bennett*, 377 A.2d at 61).

[26] *Bennett*, 377 A.2d at 61 (citations omitted).

promise or representation that would lead third parties to believe that Ward's performance in the future would be satisfactory, even though Hoff knew at the time he made the promise or representation that Ward's performance would continue to be subpar.

We cannot agree that Hoff states a claim that satisfies the *Adams* public policy exception; he was never put to a choice that would have caused him to violate the law he cites. If Hoff had given a false evaluation of Ward's job performance as allegedly demanded by Smith, his immediate supervisor, he could not have been subject to criminal liability under § 22-3221(c) for several reasons. First, that evaluation, referencing only past performance, would not have been a false promise or representation "as to future performance."[27] Moreover, even if Hoff's discussion of past performance could be taken to imply satisfactory performance in the future, that would amount to mere "prophecy or prediction," not the required positive statement that "something *is* to be done or *is* to occur."[28]

Second, at oral argument counsel for Hoff disclaimed any argument that the performance evaluation would mislead third parties outside Wiley Rein, such as

---

[27] See *supra* note 17.

[28] *Bennett*, 377 A.2d at 61 (emphasis added) (citations omitted).

prospective employers of Ward if she were let go by Wiley Rein for unsatisfactory work. Rather, we understand counsel to have argued that a false evaluation would have misled Wiley Rein itself about Ward's continuing qualifications—a strange, and entirely unpersuasive, argument. After all, Derek McCleskey, the firm's Director of Operations, had told both Hoff and his immediate supervisor, Douglas Smith, to give Ward an "unsatisfactory" evaluation; thus, even if Hoff had agreed with Smith's request to rate Ward a "satisfactory" employee, that would not have misled Director McCleskey, who already knew that Ward's performance required improvement. Furthermore, even though counsel at oral argument contended that Smith, along with McCleskey and "human resources," had authority to fire Hoff for failure to provide a false, "satisfactory" evaluation of Ward, that authority claimed for Smith is not alleged in the complaint, nor is it a reasonable inference from the facts pleaded. And, given Smith's status below McCleskey in the Wiley Rein chain of command, Hoff's contention is entirely implausible, especially because McCleskey, not Smith, fired Hoff.

Finally, according to Hoff, McCleskey fired him after claiming that the firm "had received documents indicating that [Hoff] had received loans from Ward, and that this conduct violated Firm Policy and Procedures." Hoff's complaint denies any such financial transaction with Ward, but, whatever reason Wiley Rein may

have had for firing Hoff, his complaint offers no explanation beyond the fanciful proposition that McCleskey fired Hoff because Hoff had filed an "unsatisfactory" evaluation of Ward—an evaluation that, as Hoff's own complaint acknowledges, McCleskey himself had requested.

\*\*\*\*\*

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*