Daniel CHAMBERLAIN,
et al., Appellants,

v.

AMERICAN HONDA FINANCE
CORPORATION, Appellee.

No. 05–CV–755.

District of Columbia Court of Appeals.

Argued Oct. 10, 2006.
Decided Aug. 2, 2007.

that Maryland law applied and dismissed the amended complaint for failure to state a claim because it only cited District of Columbia statutes and regulations as a basis for relief. Appellants contend that the trial court erred by (1) applying Maryland law and (2) relying on material outside the amended complaint when granting AHFC's motion to dismiss under Superior Court Civil Rule 12(b)(6). We affirm the trial court's decision.

## I. The Allegations

Martin E. Wolf, with whom Mark H. Steinbach was on the brief, Towson, MD, for appellants.

Laurie A. Hand, with whom Stephen M. Colangelo was on the brief, Washington, D.C., for appellee.

Before REID and FISHER, Associate Judges, and PRYOR, Senior Judge.

FISHER, Associate Judge:

Appellants Daniel Chamberlain and Lisa and Earl Hicks claim that appellee American Honda Finance Corporation ("AHFC") violated the District of Columbia Municipal Regulations and the Consumer Protection Procedures Act after it repossessed their automobiles. The trial court concluded

■ According to the first amended complaint, Daniel Chamberlain, a District resident, purchased a new Honda on August 23, 2003. Appellants Lisa and Earl Hicks, also District residents, purchased a new Honda on October 13, 2000.[1] The complaint does not allege that appellants purchased their cars from dealerships located within the District. In fact, the record clearly indicates, and appellants acknowledge, that they purchased their vehicles from dealerships located in Maryland. Both cars were registered in the District and financed through American Honda Finance Corporation.

During the summer of 2004, appellant Daniel Chamberlain notified AHFC that

---

1. The first amended complaint included class action allegations identifying a large class of potential plaintiffs of which Daniel Chamberlain and Lisa and Earl Hicks were the only named members. Superior Court Civil Rule 23–I requires plaintiffs seeking to maintain a class action to file a motion for certification under Rule 23(c)(1) within ninety days after the filing of the complaint. Super. Ct. Civ. R. 23–I(b)(1). The trial court granted Plaintiffs' Motion for an Extension of Time to File for Class Certification until after the court ruled on Defendant's Motion to Dismiss. Therefore, there was no certified class at the time the trial court granted the motion to dismiss. Appellants have not challenged this manner of proceeding, and this court will not consider any hypothetical claims of the unnamed class members in its review of the lower court's decision. *See Kovach v. District of Columbia,* 805 A.2d 957, 963 n. 9 (D.C. 2002) ("Although appellant filed the lawsuit as a class action, the class was not certified and we view his claim as an individual one."; affirming grant of Rule 12(b)(6) motion); *see also Searles v. Southeastern Pennsylvania Transportation Authority,* 990 F.2d 789, 790 n. 1, & 794 (3d Cir.1993) (affirming dismissal of complaint; "The district court did not rule on the class certification because it ultimately concluded that plaintiff failed to state a claim."); *Barth v. Firestone Tire & Rubber Co.,* 661 F.Supp. 193, 203 (N.D.Cal.1987) (courts "generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification").

he could not make the payments on his vehicle and wished to return it. Following AHFC's instructions, Mr. Chamberlain returned the car to the dealer, Pohanka Honda. On July 15, 2004, AHFC offered to reinstate the sales contract if Mr. Chamberlain would pay, among other sums, the cost of repossession ($300.00) and storage charges at the rate of $20.00 per day beginning July 12, 2004. After Mr. Chamberlain returned the car to the dealer, it was stored at a lot in Annapolis, Maryland. AHFC sold the car at auction and mailed notices to Mr. Chamberlain on October 12, 2004, and January 14, 2005, demanding payment of a deficiency balance. The "debt" as of January 14 was $9,186.37, including the fees associated with repossession and storage of the vehicle prior to re-sale.

In January 2005, AHFC repossessed the Hicks' vehicle from outside their home in the District.[2] On January 20, AHFC offered to return the vehicle, but only if Mr. and Mrs. Hicks paid the full balance due, including expenses. After the repossession, AHFC did not disclose the storage location of the vehicle. As of the date the amended complaint was filed, Lisa and Earl Hicks were not aware of any sale of their vehicle at auction or of any resulting deficiency balance.

On April 26, 2005, appellants filed their amended complaint in the Superior Court alleging violations of the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C.Code § 28–3901 et seq. (2001), and the District of Columbia Municipal Regulations, 16 DCMR §§ 341.5 and 342.2.[3] Specifically, appellants alleged that AHFC: (1) violated § 342.2 of Title 16 of the Municipal Regulations by assessing storage fees at $20.00 per day, thus exceeding the regulation's limit of $3.00 per day; (2) violated § 342.2 by charging total repossession expenses in excess of the $100.00 limit; and (3) violated § 341.5 by storing the repossessed vehicles in Annapolis, Maryland, although the regulation requires that vehicles be stored in the District for fifteen days if they are repossessed in the District. Finally, appellants claimed that the violations of §§ 341.5 and 342.2 constituted unfair and deceptive trade practices which violated the DCCPPA. See D.C.Code § 28–3904(dd).[4] Appellants sought punitive damages, restitution damages, and injunctive and other equitable relief, including orders to vacate any judgments entered in favor of AHFC for deficiency balances. Appellants attached to their amended complaint post-repossession letters from AHFC advising appellants of their rights to recover their vehicles, including the October 12, 2004,

---

2. AHFC had repossessed the Hicks' vehicle once before. On February 8, 2004, AHFC repossessed the automobile from its parking space near their home in the District of Columbia. They were offered the opportunity to reinstate the contract and retrieve their vehicle if they paid an amount including the cost of repossession ($325.00) and any storage charges associated with the repossession at the rate of $20.00 per day. The car had been stored in a lot in Annapolis, Maryland, after repossession. Mr. and Mrs. Hicks paid these charges and retrieved their vehicle.

3. The original complaint, filed on March 23, 2005, included only the claims of Mr. Chamberlain and a class of unnamed plaintiffs.

The First Amended Complaint added the claims of Mr. and Mrs. Hicks but did not otherwise make any material changes to the allegations in the original complaint.

4. Section 28–3904 states in relevant part: "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to ... (dd) violate any provision of title 16 of the District of Columbia Municipal Regulations." D.C.Code § 28–3904. Under appellants' theory of liability, they must first prove a violation of Title 16 of the Municipal Regulations in order to establish a violation of the DCCPPA.

and January 14, 2005, letters to Mr. Chamberlain. However, appellants did not attach the sales contracts.

AHFC moved to dismiss the amended complaint under Superior Court Civil Rule 12(b)(6), arguing that it failed to state a claim upon which relief could be granted and attaching the retail installment contracts signed by Mr. Chamberlain and Mr. and Mrs. Hicks. Appellants opposed the motion, asserting, among other things, that it would be improper for the trial court to consider the contracts when ruling on the 12(b)(6) motion.[5]

The trial court dismissed the complaint, concluding that Maryland law applied to these transactions but that appellants had only attempted to allege violations of District of Columbia law. The court rested its conclusion on two alternative grounds. First, "[c]onsidering only the facts within the pleadings," the court determined that "it is uncontested that plaintiffs bought the vehicles at Maryland car dealerships, negotiated the sales contracts in Maryland, and agreed to make payments in Maryland." The court therefore was persuaded that Maryland law should apply. Second, the court looked outside the complaint to the retail installment contracts, both of which contained a choice of law provision

stating that Maryland law would apply.[6] Appellants timely filed their notice of appeal.

Appellants argue that the trial court erred by applying Maryland law and by considering the provisions of the retail installment contracts attached to AHFC's motion to dismiss. For the reasons explained below, we agree that the complaint failed to state a claim upon which relief may be granted. We do not find it necessary to analyze the contracts or to engage in a choice of law analysis. Examining only the facts alleged in (or omitted from) the complaint, and considering the undisputed facts that both cars were purchased in Maryland, we conclude as a matter of law that §§ 341.5 and 342.2 of Title 16 of the Municipal Regulations do not apply to the facts presented.

## II. Statutory and Regulatory Framework

On October 20, 1960, acting pursuant to authority conferred by Congress, the Commissioners of the District of Columbia promulgated "Regulations Governing the Businesses of Buying, Selling and Financing of Motor Vehicles in the District of Columbia." Order No. 60–2219 (codified as amended at 16 DCMR § 300 *et seq.* (2007)).[7] The regulations controlled,

---

**5.** Superior Court Civil Rule 12(b) provides:

> If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**6.** Both contracts specifically refer to Subtitle 10 of Title 12 of the Maryland Commercial Law Article, otherwise known as the "Credit Grantor Closed End Credit Provisions" (CLEC). *See* MD.CODE ANN., COM. LAW § 12–1001 *et seq.* (2000). The Maryland Court of

Appeals has applied the CLEC to a secured retail installment contract for the purchase of a motor vehicle. *See Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 613 A.2d 986 (1992). Generally, the CLEC "addresses many aspects of closed end credit extensions, including interest rates, other charges, insurance, prepayment, refinancing, default, collection, and repossession." *Id.* at 988. However, the section of the CLEC dealing with repossession "is silent on the place of storage aspect of repossession." *Id.* at 994, citing CLEC § 12–1021.

**7.** Congress passed an Act on April 22, 1960, to "provide for the regulation of finance charges for retail installment sales of motor vehicles in the District of Columbia, and for

among other things, the manner of repossessing cars in the District and the terms of retail installment contracts. Although the regulations have been amended over time, the provisions at issue in this case remain much the same as they were in 1960.[8]

Section 341 of the regulations is titled "Holder's Duties on Repossession." The current version of § 341.5 states:

> For fifteen (15) days after the notice [of the buyer's right to redeem the vehicle] required by § 341.4 has been delivered personally or mailed, *the holder* shall retain or store the repossessed motor vehicle in the District or the state and county in which the consumer resides or the state and county where it was located and repossessed. During this period the buyer may redeem the motor vehicle and become entitled to take possession of it.

*See* D.C. Law 4–90, § 4(k)(3) (codified at 16 DCMR § 341.5) (emphasis added); *see also* Commissioners' Order No. 60–2219, § 502(b). Sections 342.1(c) and 342.2 state:

> 342.1 To redeem the motor vehicle the buyer shall do the following ...
>
> (c) If the notice provided for in §§ 341.1 and 341.2 was given, pay the actual and reasonable expenses of retaking and storing the goods.

> 342.2 Charges under § 342.1(c) shall not exceed three dollars ($3) per day, and the total ordinary expenses of retaking shall not exceed one hundred dollars ($100).

*See* D.C. Law 4–90, § 4(k)(4) (codified at 16 DCMR §§ 342.1, 342.2).[9] Failure to comply with either of these requirements precludes any "holder" from collecting a deficiency balance from the buyer. 16 DCMR § 340.5. Furthermore, a violation of either of these provisions "constitutes an unfair trade practice," remedies for which are included in the UNIFORM COMMERCIAL CODE ("U.C.C.") and chapters 38 and 39 of Title 28 of the D.C.Code. *Id.* §§ 340.6, 340.7, 346.2, 346.3.

The regulations define a "holder" as "any person legally or beneficially entitled to the proceeds of the instrument of security." 16 DCMR § 399.1. "Instrument of security" is in turn defined as including a "retail installment contract," which by definition must be "a contract entered into in the District...." D.C.Code § 50–601(5)(9) (2001), formerly § 40–1101(5)(9) (1981), incorporated by reference in 16 DCMR § 399.1.[10]

### III. Standard of Review—Rule 12(b)(6) Motion to Dismiss

 This court reviews *de novo* the trial court's dismissal of the complaint pursuant to Rule 12(b)(6). *See, e.g., Darrow*

---

other purposes." Act of Apr. 22, 1960, Pub.L. No. 86–431, 74 Stat. 69 (title). In issuing Order No. 60–2219, the Commissioners exercised their authority under the Act to "make and enforce such regulations as they in their discretion deem appropriate ... to prevent unconscionable practices in connection with retail installment transactions ...." § 2(e)(1), 74 Stat. at 70.

**8.** The Council of the District of Columbia amended the 1960 Regulations when it passed the "District of Columbia Automobile Financing and Repossession Act of 1981." D.C. Law 4–90, 29 D.C.Reg. 666 (February 12, 1982) (codified at 16 DCMR § 300 *et seq.*). The 1981

Act primarily supplemented the provisions of the 1960 Regulations.

**9.** The 1981 Regulations raised the cap on storage fees to $3.00 per day from the 1960 Regulation level of $1.50 per day. The Act also added a $100.00 cap on total repossession expenses. *See* Commissioners' Order No. 60–2219, § 502(c)(3).

**10.** The definition also applies to "a contract [of a specified nature] ... entered into by a seller licensed or required to be licensed by the District...." So far as appellants have informed us, this broader definition has no impact on this case.

*v. Dillingham & Murphy, LLP,* 902 A.2d 135, 137 (D.C.2006) (citing *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 877 (D.C.1998)). In reviewing the complaint, the court must accept its factual allegations and construe them in a light most favorable to the non-moving party. *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.,* 870 A.2d 58, 62 (D.C.2005). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Bell Atlantic Corp. v. Twombly,* — U.S. —, —, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Furthermore, dismissal under Rule 12(b)(6) is appropriate where the complaint fails to allege the elements of a legally viable claim. *See Jordan Keys & Jessamy,* 870 A.2d at 62 (affirming dismissal for failure to state a claim; "We agree with the trial judge that Jordan Keys' amended complaint, viewed in the light most favorable to the pleader, does not allege the elements of an implied-in-fact contract."); *Taylor v. FDIC,* 328 U.S.App.D.C. 52, 60, 132 F.3d 753, 761 (1997) ("Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiffs' favor, the court finds that the plaintiffs have failed to allege all the material elements of their cause of action.") (citations omitted)). To be sure, "complaints need not plead law or match facts to every element of a legal theory," *Krieger v. Fadely,* 341 U.S.App. D.C. 163, 165, 211 F.3d 134, 136 (2000) (internal quotation marks and citation omitted), but "the pleader must set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCE-DURE: CIVIL 3D § 1357, at 683 (2004). *See In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981) ("Despite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.").

■ This court also reviews *de novo* questions of statutory construction. *Robert Siegel, Inc. v. District of Columbia,* 892 A.2d 387, 393 (D.C.2006) (quoting *Richardson v. Easterling,* 878 A.2d 1212, 1216 n. 5 (D.C.2005) (question of statutory construction is a "quintessential issue of law subject to de novo review")). "Where, as here, a regulation is legislative in character, the rules of construction applicable to statutes should be used in determining its meaning." *EDM & Associates, Inc. v. GEM Cellular,* 597 A.2d 384, 388 (D.C. 1991). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Jeffrey v. United States,* 892 A.2d 1122, 1128 (D.C.2006) (quoting *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C. 1983) (en banc)). This court has held that "[a] cornerstone of statutory interpretation is the rule that a court 'will not look beyond the plain meaning of a statute when the language is unambiguous and does not produce an absurd result.'" *J. Frog, Ltd. v. Fleming,* 598 A.2d 735, 738 (D.C.1991) (quoting *Gibson v. Johnson,* 492 A.2d 574, 577 (D.C.1985) (citation omitted)).

### IV. Discussion

■ We agree with the trial court's determination that the complaint failed to state a claim upon which relief can be granted, though we do so on somewhat different grounds.[11] Appellants based

---

**11.** "Where there will be no procedural unfairness, 'we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge or raised or considered in the trial court.'" *Nat'l Ass'n of Post-*

their claim on §§ 341.5 and 342.2 of Title 16 of the District of Columbia Municipal Regulations but failed to allege (and, as we discuss, could not allege) facts necessary to establish a violation of these provisions. In reaching this decision, we find it unnecessary to perform a choice-of-law analysis. Because District of Columbia law does not apply to the circumstances presented, there is no choice of law to be made. Appellants will suffer no procedural unfairness from our approach because they briefed the same issue we now discuss and had an additional opportunity to address it at oral argument.

▪ The key issue is whether the regulations relied upon by appellants apply when, as here, the automobile was not purchased within the District. Specifically, do the provisions governing the storage of vehicles repossessed in the District (§ 341.5), and fees associated with such repossession (§ 342.2), apply when the car has been purchased outside the District?

According to their plain language, these two regulations apply only to "holders." Appellants acknowledge this and assert "[t]here can be no doubt that AHFC is the holder in this case," see Reply Br. of Appellants at 2, but they make no effort to

demonstrate that their assertion is true. As stated above, the regulations define "holder" as "any person legally or beneficially entitled to the proceeds of the instrument of security." 16 DCMR § 399.1. "Instrument of security" is a defined term which "means any promissory note, retail installment contract, or other written promise to pay the unpaid balance of the total amount to be paid by a retail buyer of a motor vehicle." D.C.Code § 50–601(5) (2001), formerly § 40–1101(5) (1981), incorporated by reference in 16 DCMR § 399.1. "Retail installment contract," the type of document relevant here, means "a contract entered into in the District. . . ." *Id.* § 50–601(9). In other words, AHFC is not a "holder" for purposes of these regulations unless the sales contracts were "entered into in the District." [12]

The complaint does not allege that the parties entered into their retail installment contracts in the District. We need not rely solely on a failure of pleading, however. The actual sales contracts establish, and appellants concede, that these automobiles were sold in Maryland. Appellants did not attach the contracts to their complaint, but they did refer to the purchases by date, averred that they financed their

*masters of the United States v. Hyatt Regency Washington,* 894 A.2d 471, 474 (D.C.2006) (quoting *In re Walker,* 856 A.2d 579, 586 (D.C.2004) (no "procedural unfairness" exists where appellant "has had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual and legal presentation with respect thereto")).

12. Other regulations within Chapter 3 of Title 16 may well apply to repossession of a motor vehicle within the District regardless of where it was purchased. For example, an automobile repossessor must be licensed in the District in order to engage in that business here. 16 DCMR § 301.1. Section 340.2 provides that "[u]nless the motor vehicle can be repossessed without a breach of the

peace, it shall be repossessed by legal process." *Id.* § 340.2. Moreover, the individual repossessing a vehicle must notify the Metropolitan Police Department within one hour and provide specified information. *Id.* § 340.4. Violations of these regulations may trigger remedies under the U.C.C. and the DCCPPA, and/or result in a forfeiture of any deficiency that a holder may otherwise be entitled to recover. 16 DCMR §§ 340.5–340.7, 346.1–346.3. We do not discuss these provisions in more detail because the complaint does not allege any violations of these regulations governing the manner of repossession in the District of Columbia. Indeed, appellant Chamberlain could not make such allegations because his car was not repossessed within the District—he surrendered it in Maryland.

new automobiles through AHFC, and recited their respective account numbers. The letters they did attach to the complaint specifically refer to the applicable retail installment contract. Moreover, appellants do not dispute the authenticity of the contracts attached to AHFC's motion to dismiss. More fundamentally, the regulations they invoke would not apply at all unless appellants had financed their cars by entering into retail installment contracts.

Under these circumstances, it is appropriate to consider the contracts, and doing so does not convert the motion to dismiss into one for summary judgment. *See Washkoviak v. Student Loan Marketing Ass'n,* 900 A.2d 168, 178 (D.C.2006) ("The trial court's consideration of appellants' promissory notes, which Sallie Mae attached to its motion to dismiss, was insufficient to convert Sallie Mae's 12(b)(6) motion into a motion for summary judgment, because appellants themselves referred to the promissory notes in their original complaint."); *Oparaugo v. Watts,* 884 A.2d 63, 76 n. 10 (D.C.2005) (court was permitted to consider documents that "were referenced in the complaint and are central to appellant's claim"); *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are

considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). In any event, appellants would not be prejudiced at all by any technical error in failing to treat the motion as one for summary judgment. *See Scoville Street Corp. v. District TLC Trust, 1996,* 857 A.2d 1071, 1074–75 (D.C. 2004) (citing *Alioto v. Marshall Field's & Co.,* 77 F.3d 934, 936 (7th Cir.1996), for proposition that "one seeking to upset judgment resulting from improper conversion of 12(b)(6) motion to one for summary judgment must show that notice and an opportunity to respond would have mattered, that is, it would have precluded summary judgment"); *Hollis v. United States Dep't of the Army,* 272 U.S.App. D.C. 379, 382, 856 F.2d 1541, 1544 (1988) ("no prejudice can result from . . . nonobservance [of Rule 12(b)'s notice-and-opportunity requirement] where it is clear that the dispositive facts will remain undisputed and unchanged"). Here, the dispositive facts are that the vehicles were purchased in Maryland.

For all these reasons, we agree that the complaint failed to state a claim upon which relief can be granted. It does not plead (either directly or inferentially) that AHFC is a "holder" and thus fails to state a violation of § 341.5 or § 342.2. Because appellants failed to plead any violation of these regulations, they also failed to state a claim for violation of the DCCPPA.[13]

---

**13.** Appellants argue that the decision of the United States Court of Appeals in *Williams v. First Gov't Mortgage & Investors Corp.,* 336 U.S.App.D.C. 71, 176 F.3d 497 (1999), supports application of the DCCPPA to the conduct of AHFC. We find the two cases distinguishable on their facts. First, *Williams* involved several contracts in which the collateral was *a house* located inside the District but financed in Maryland. Second, the DCCPPA claim in *Williams* did not hinge on whether the plaintiffs proved a separate violation of Title 16 of the D.C. Municipal Regulations, as appellants were required to do here. *See Williams,* 336 U.S.App. D.C. at 72, 176 F.3d at 498 (Williams claimed,

among other things, "that First Government violated [§ ] 28–3904(r) of the [DCCPPA] by knowingly taking advantage of his inability to protect his interests in the loan transaction or by knowingly making him a loan he could not repay with any reasonable probability"). Third, although the opinion of the court of appeals did not reveal it, the district court in *Williams* indicated that the parties agreed to apply District of Columbia law to their dealings by including a choice of law provision in their contracts. *Williams v. Central Money Co.,* 974 F.Supp. 22, 26 (D.D.C.1997). Finally, we are not bound by *Williams,* a decision of the United States Court of Appeals, and do not find it applica-

The judgment of the Superior Court is hereby

*Affirmed.*

ble to the facts of this case. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) (the District of Columbia Court of Appeals is "not bound by the decisions of the United States Court of Appeals rendered after" February 1, 1971).