Paul ZUKERBERG, Appellant,

v.

D.C. BOARD OF ELECTIONS AND ETHICS, et al., Appellees.

No. 14–CV–222.

District of Columbia Court of Appeals.

Filed June 4, 2014.

Before: BECKWITH, EASTERLY, and McLEESE, Associate Judges.

## ORDER

PER CURIAM.

This appeal was submitted to the court after oral argument on May 29, 2014. After the Council of the District of Columbia ("the Council") passed legislation in 2013 providing that an election for the position of Attorney General of the District "shall not be [held] before January 1, 2018," D.C. Law No. 20–60, § 201; 60 D.C.Reg. 15487 (Nov. 8, 2013) (amending D.C.Code § 1–301.82(a)), appellant Paul Zukerberg sued appellees, the Council and the District of Columbia Board of Elections and Ethics ("the BOEE"), alleging that the legislation was in violation of the District of Columbia Charter. The Charter was amended in 2010 after the Council passed D.C. Act No. 18–0351, the Attorney General for the District of Columbia Clarification and Elected Term Amendment Act ("the Elected Attorney General Act"), which was then ratified in relevant part by the electorate in a Charter amendment referendum, so as to require, Mr. Zukerberg asserted, that the first election for the position of Attorney General be held in 2014. *See* D.C.Code § 1–204.35 (2012 Repl.). Appellees moved to dismiss Mr. Zukerberg's complaint on the ground that he had failed to state a claim. *See* Super. Ct. Civ. R. 12(b)(6). Specifically, they argued that the Elected

Attorney General Act only required that an election for the position of Attorney General be held "after January 1, 2014," D.C.Code § 1–204.35(e), the plain meaning of which they asserted permitted an election to be held any time after that date. The Superior Court accepted appellees' interpretation of the Elected Attorney General Act and granted their motion to dismiss.

Our review of the Superior Court's 12(b)(6) ruling and its interpretation of the Elected Attorney General Act is de novo. *See Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1022–23 (D.C.2007). We determine that the Superior Court's interpretation was incorrect as a matter of law and reverse. We issue this order now because time is of the essence. A published opinion will follow, but to provide the parties, the Superior Court, and the public some basis for understanding our holding, we present the following summary of our reasoning.

We hold that the pertinent language in the Elected Attorney General Act—"[t]he first election for the position of Attorney General shall be *after January 1, 2014*," D.C.Code § 1–204.35(e) (emphasis added)—is ambiguous when considered in isolation. The italicized language could mean the following day, any time after that date, or some point in between. Examined in the broader context of D.C.Code § 1–204.35, which begins with the directive that "[t]he Attorney General ... shall be elected on a partisan basis by the registered qualified electors of the District," D.C.Code § 1–204.35(a), and provides among other things that the term of office shall be four years and "shall coincide with the term of office of the Mayor," D.C.Code § 1–204.35(c), (who will be elected in 2014), we conclude that a far more natural reading of "shall be after January 1, 2014" is that an election for the District's Attorney

General must be held in 2014. We further determine that there is substantial support for this interpretation when one considers both the legislative intent of the Council that drafted the language of the Act and the legislative intent of the electorate, as is appropriate when a Charter amendment is effected by means of referendum, a mechanism that requires the approval of both the Council and the voting public. D.C.Code § 1–203.03(a) (2012 Repl.). Accordingly, we reject appellees' argument that the electorate's intent should be given little if any consideration. To the extent appellees rely on a footnote in *Jackson v. D.C. Bd. of Elections & Ethics*, 999 A.2d 89, 102 n. 19 (D.C.2010), we disagree this provides support for the categorical disregard of voter intent in a Charter amendment by ballot referendum, particularly in a circumstance where, as here, the ambiguous language of the Charter amendment is summarized by unambiguous language on the ballot.

The legislative intent of the Council to require an election in 2014 is reflected in, among other things: (1) the statement of Councilmember Mendelson, who proposed the addition of the language in the Elected Attorney General Act, discussed above, that became D.C.Code § 1–204.35(e), explaining that it was meant to "clarif[y]" that the election "shall coincide with the election for Mayor in [the] 2014 general election"; (2) the Council's failure to object to the BOEE's certified summary statement of the legislation, which appeared on the ballot, and provided that the election would be held "in 2014," *see* 3 DCMR § 1802.2 (2012) (requiring the summary statement to "accurately and impartially reflect the meaning and intent of the proposed Charter amendment"); 3 DCMR § 1802.5 (2012) (requiring notification to both "the Mayor and the Chair[person] of the Council, either by personal delivery or by certified mail, of the exact wording" of the summary statement); and (3) the ab-

sence of any record evidence that anyone in 2010, 2011, 2012, or even early 2013 (when legislation to restructure the Office of the Attorney General was first proposed) contemplated *not* holding the election for Attorney General in 2014.

The legislative intent of the electorate to require an election in 2014 is reflected in the explanation of the Elected Attorney General Act presented to the voters in the ballot summary when they went to the polls. The ballot summary explained that voters were being asked to consider whether the Attorney General should be elected to a four-year term of office and that "[i]f voters approve of this amendment ... residents of the District of Columbia would begin voting for the Attorney General in 2014."

Appellees make a number of points in support of the plain language argument on which they prevailed in the Superior Court or alternatively in support of an argument that the legislative intent of the Council was to allow for an open-ended time frame in which to hold the election for the position of Attorney General. We are not persuaded. For example, we see no support for appellees' assertion that the Elected Attorney General Act was not self-executing and required further action by the Council. In any event, this argument would seem to undercut the need for Council to take any action at all in 2013 to delay the election. We are similarly unconvinced by appellees' reliance on a different provision of D.C. Act No. 18–0351 (one that did not amend the Charter) that permits the Mayor to appoint and reappoint the Attorney General "[u]ntil such time as an Attorney General is elected." D.C.Code § 1–301.82(a). It is apparent that this language was a vestige from the original plan to amend the Charter by act of Congress (an endeavor of unknown timing). Moreover, as Mr. Zukerberg explains,

the provision for reappointment of an Attorney General could have come into play before 2014, and thus is not inconsistent with the conclusion that the Charter amendment was intended to require an election for Attorney General in 2014. We acknowledge other arguments—e.g., that the Council has used more specific language on other occasions (including in a failed proposed amendment to the Elected Attorney General Act by Councilmember Wells to retain an appointed Attorney General, but to have an elected District Attorney to prosecute crimes in the District) and that while interpreting the language of the Elected Attorney General Act we should keep in mind the Council's plenary authority under Section 752 of the Home Rule Act, D.C.Code § 1–207.52 (2012 Repl.), to regulate elections (so long as the Council takes no action that conflicts with the Charter)—but do not consider them to be strong enough to outweigh the evidence of legislative intent noted above.

Accordingly, we reverse and remand this case for expeditious proceedings consistent with this order. It follows from our holding that an election must be held in 2014 unless it would not be practically possible for BOEE to do so under the applicable statutory and regulatory provisions. *Cf. Reynolds v. Sims*, 377 U.S. 533, 585, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) ("In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles."). If the District can establish that an election in 2014 is not practically possible, then the election must be held as soon thereafter in 2015 as is practically possible. In determining whether an election would be practically possible, the trial court shall be guided by the provisions of the Charter

as amended governing the timing of special elections for the position of Attorney General, D.C.Code § 1–204.35(b)(1) (2013 Supp.), and authorizing a special election in as few as 70 days.

The Clerk is directed to issue the mandate with this order.