*Notice:* *This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.* *Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-0546

JOEL FREYBERG, APPELLANT,

V.

DCO 2400 14TH STREET, LLC, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-001327 B)

(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Argued March 30, 2023                    Decided November 22, 2023)

*William H. Shawn*, with whom *Steven M. Oster* was on the brief, for appellant.

*Robert P. Fletcher*, with whom *Darcy C. Osta* was on the brief, for appellees.

Before DEAHL and HOWARD, *Associate Judges*, and GLICKMAN, *Senior Judge*.

DEAHL, *Associate Judge*:  Joel Freyberg alleged that property was stolen from his apartment when his landlords gave contractors access to it to make needed repairs.  The contractors were there to remediate damage resulting from a gunfight within the apartment building's hallways that led to a stray bullet bursting a pipe, which flooded Freyberg's apartment and dozens of others.  Freyberg alleged that his

landlords unlocked his door, left it ajar, and failed to take any reasonable measures to either supervise the contractors working in his unit or to prevent trespassers from entering it. Freyberg sued the landlords for negligence. The landlords filed a motion to dismiss, which the court granted on the ground that Freyberg had not shown the "heightened foreseeability" generally required when one person sues another for damages resulting from the defendant's failure to protect against a third party's intervening criminal act.

Freyberg now appeals and contends that he adequately stated a claim for negligence under two distinct theories. On the first theory, he argues that he was not required to demonstrate heightened foreseeability because the landlords did not merely fail to protect against theft but affirmatively removed protections against it that he had put in place when they unlocked his front door and left it ajar. In short, he argues that he does not need to show heightened foreseeability where his landlords created the opportunity for crime in the first place by leaving his door open without putting any substitute security measures in place (such as supervising who was coming and going from the apartment). On the second theory, Freyberg argues that the landlords failed to implement reasonable security measures to prevent the gunfight from happening in the first place, and because that gunfight was a but-for cause of the theft, his landlords should be held liable.

We conclude that the trial court erred in dismissing Freyberg's complaint because he adequately stated a claim for negligence under the first theory, though not the second. People close and lock their doors to prevent crimes like the theft of their belongings. If, as Freyberg alleges, his landlords unlocked his front door, left it ajar, and did not monitor the people going in and out of the unit, he did not need to plead the heightened foreseeability that applies in failure-to-protect cases; his landlords did not merely fail to act, but affirmatively removed protections that Freyberg himself had put in place. In that circumstance, the heightened foreseeability requirement simply does not apply. We therefore reverse the dismissal of Freyberg's negligence claim and remand for further proceedings.

## I.

Freyberg alleged the following in his complaint. A gunfight broke out "just down the hallway" from Freyberg's unit in a Columbia Heights apartment building. A stray bullet hit a pipe in the water sprinkler system, flooding fifty-six units in the building, including Freyberg's. The apartment building's management sent an email to the residents explaining what had happened and letting them know that there would be contractors coming in to repair the damage to their apartments, though Freyberg was out of town at the time. When Freyberg returned the next day, he "discover[ed] his apartment front door unlocked and ajar," but there was "no sign of

[the apartment] building['s] management security or other personnel present" and "unidentified individuals were entering and exiting his and other apartments at will." Several items of property were missing from his apartment, including "watches, cufflinks, other valuable jewelry, clothing, and shoes." Freyberg found a pair of his shoes in a nearby vacant apartment that he was told was full of trash waiting to be disposed of, but he did not recover any of the other items.

Freyberg sued the property's owner, DCO 2400 14th Street, LLC, and the property's operator, UDR, Inc. (collectively, the landlords), in D.C. Superior Court.[1] Freyberg claimed that their negligence led to his property being stolen, and he asserted that the value of his missing property was "in excess of $75,000," and estimated it to be $500,000. He also brought claims for breach of contract, breach of the implied warranty of habitability, and housing code violations. Only his negligence and breach of contract claims are at issue in this appeal.

Freyberg advanced two distinct theories of negligence. First, he argued that it was "foreseeable" to the landlords that his "personal property would be stolen due to [their] unlocking, opening, and leaving ajar the door to [his] apartment without

---

[1] Freyberg initially brought his suit in federal court. That court dismissed the case without prejudice. *See Freyberg v. DCO 2400 14th St., LLC*, No. 20-3156, 2021 WL 1317545, at *2, *5 (D.D.C. Apr. 8, 2021).

providing any security personnel." Second, he alleged that the landlords' failure to secure the building led to the gunfight, which in turn led to his property being stolen. Relevant to this second theory, he alleged that the landlords "failed to keep the building[']s exterior doors and locks in good repair," "failed to secure the building to prevent entry of unauthorized individuals," "failed to eject trespassers and criminals from the building," "failed to do minimal background checks into prospective tenants," and "allowed gang, drug, and other illegal activities in the building's common areas." In Freyberg's view, that meant the landlords "knew or should have known the building was unsafe" and yet "failed to take reasonable steps to prevent criminal activity at the building."

Freyberg's breach of contract claim focused on a separate complaint: he alleged that DCO failed to enforce various provisions in its residents' leases. More specifically, the residents' leases "prohibit[ed] conduct including, *inter alia*, criminal activity, possession of a weapon, possession of a controlled substance, disturbing or threatening the health and safety of building residents, possessing drug paraphernalia, *etc.*" And the leases contained both a "Crime/Drug Free Housing Addendum" and a "Smoke Free Lease Addendum," which taken together authorized DCO to terminate the leases of any residents who smoked or engaged in criminal activity in the building. According to Freyberg, there was "incessant marijuana smoking" and other "known, repeated violations" of these provisions on his floor,

yet DCO never terminated the leases of residents who committed those violations, in violation of their contractual duties to him.

The landlords moved to dismiss Freyberg's entire suit for failure to state a claim under Rule 12(b)(6). *See* Sup. Ct. Civ. R. 12(b)(6). The trial court granted the motion and dismissed each of Freyberg's claims. Freyberg now appeals.

## II.

Freyberg makes four arguments on appeal: (1) he sufficiently pled a claim of negligence when he alleged that his landlords affirmatively removed protections that he had placed on his property (by closing and locking his front door), which led to the theft of his property; (2) he sufficiently pled a claim of negligence against the landlords for failing to secure the apartment building, leading to the theft of his property; (3) he sufficiently pled a breach of contract claim against DCO for its failure to eject tenants that violated various lease provisions; and (4) the trial court abused its discretion in dismissing Freyberg's complaint without giving him leave to amend and in denying his motion to file a sur-reply. We consider each argument in turn.

**A.**

Freyberg first argues that he adequately pled a claim of negligence against the landlords based on the theory that they created an opportunity for crime by unlocking his door and leaving the apartment unsupervised, allowing third parties to enter it and steal his property. We agree.

We review de novo the dismissal of a complaint under Rule 12(b)(6). *Chamberlain v. Am. Honda Finance Corp.*, 931 A.2d 1018, 1022 (D.C. 2007). We treat the facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party (here, Freyberg). *Id.* at 1023. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And the complaint must "allege the elements of a legally viable claim." *Id.* "Bare allegations of wrongdoing that 'are no more than conclusions are not entitled to the assumption of truth,' and are insufficient to sustain a complaint." *Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1019 (D.C. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

To establish negligence, a plaintiff must show that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Murphy v. Schwankhaus*, 924

A.2d 988, 991 (D.C. 2007) (citation omitted). An intervening act of a third person may break the chain of causation, relieving the initial actor of liability for want of proximate cause, in certain circumstances. *Lacy v. District of Columbia*, 424 A.2d 317, 323 (D.C. 1980); *see also Spar v. Obwoya*, 369 A.2d 173, 178 (D.C. 1977).

Where the intervening act is criminal, we have often said that the defendant will be relieved of liability unless the plaintiff can make a "heightened showing of foreseeability," i.e., that "the criminal act [wa]s so foreseeable that a duty arises to guard against it."[2] *Bd. of Trustees of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 870 (D.C. 2009) (citations omitted). "The crux of heightened foreseeability is a showing of the defendant's increased awareness of the danger of a particular criminal act." *Id.* at 872 (internal citations omitted); *see also Lacy*, 424 A.2d at 323 ("[Heightened foreseeability] requires that the foreseeability of the risk be more precisely shown."). The plaintiff is "obligated to present evidence establishing that the [crime] was so

---

[2] Our precedents collapse the question of whether a duty exists with the question of whether a harm might foreseeably result from a breach of that duty. We have "noted the theoretically somewhat anomalous blending of duty and foreseeability in this court's decisions," but have never had occasion "to reconsider that framework of analysis." *District of Columbia v. Beretta*, 872 A.2d 633, 641 n.4 (D.C. 2005); *see also Workman v. United Methodist Comm.*, 320 F.3d 259, 265 (D.C. Cir. 2003) (collecting cases and recounting that "the D.C. courts have repeatedly spoken of the heightened foreseeability requirement in terms of duty"). We likewise leave that conceptual framework undisturbed here, though it is indeed conceptually peculiar and the source of a great deal of confusion in our precedents.

foreseeable that it became [the defendant's] duty to guard against it." *DiSalvo*, 974 A.2d at 872 (quoting *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 427 (D.C. 1993)).

We have previously applied the heightened foreseeability standard only in the context of what we will call "pure" failure-to-protect cases. In that category of cases we have held, for example, that a landlord might be held liable where he failed to keep his building's exterior door in working order, despite knowledge of crime in the area (and attempted break-ins in the building itself), after one of the tenant's ex-lovers entered the building and set fire to it. *Graham v. M & J Corp.*, 424 A.2d 103, 104-05 (D.C. 1980); *see also Spar*, 369 A.2d at 175 (landlord not entitled to directed verdict because they knew that lock on exterior door had been broken for at least a week and tenants had complained about lack of front-door security); *Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 479 (D.C. Cir. 1970) (landlord was negligent where he employed insufficient security personnel, one entrance to the building was "often left unlocked all night," and he knew of "increasing number of assaults, larcenies, and robberies" in the hallways); *Clement*, 634 A.2d at 426 (employer failed to protect their employee while leaving the premises); *District of Columbia v. Doe*, 524 A.2d 30, 31-33 (D.C. 1987) (school failed to protect its

student, who was abducted from campus and then raped).[3] The bar for establishing heightened foreseeability in these pure failure-to-protect cases is relatively high, because we want to "limit the extent to which defendants become the insurers of others' safety from criminal acts," and we do not want to invite an absurd sprawl of liability whereby everyone is responsible for preventing all crimes at all times. *DiSalvo*, 974 A.2d at 871.

But this is not a pure failure-to-protect case, so it is not at all clear that our precedents requiring heightened foreseeability apply. Freyberg's argument is that his landlords undertook a duty to protect against the foreseeable risks that they

---

[3] Even when there is heightened foreseeability, we have expressly declined to decide whether a person may be liable for a third party's intervening criminal acts absent some "special relationship" between the tortfeasor and the injured party. *See District of Columbia v. Beretta*, 872 A.2d 633, 641 (D.C. 2005) (en banc) ("[W]e pass over the question whether a 'special relationship' between a plaintiff and a defendant must undergird any claim of negligence in the District based on harm stemming directly from the criminal acts of third persons."). We once again reserve judgment on that question today. The D.C. Circuit has posited that there "must be[] a relational component" in this court's precedents, suggesting that we have in fact applied a "sliding scale," where "[i]f the relationship between the parties strongly suggests a duty of protection, then specific evidence of foreseeability is less important, whereas if the relationship is not of a type that entails a duty of protection, then the evidentiary hurdle is much higher." *Workman v. United Methodist Comm. on Relief*, 320 F.3d 259, 264 (D.C. Cir. 2003). This uncertainty is likely related to our court's conflation of the duty and foreseeability requirements, *see supra* note 2; a more coherent view might be that it is the relationship between the parties that establishes a duty of care, and the nature of that relationship informs the degree of foreseeable harm that one must guard against. But we leave any recalibration of our precedents for another day.

themselves created (heightened foreseeability aside) when they affirmatively unlocked his door and left it open, thereby removing a protection that he had put on in place. He makes a strong case. Tort law is far more willing to assign liability to people for their affirmative acts as opposed to their mere omissions. "Normally, where there is an affirmative act which affects the interests of another, there is a duty not to be negligent with respect to the doing of the act. On the other hand, where the negligence of the actor consists in a failure to act for the protection or assistance of another, there is normally no liability." Restatement (Second) of Torts ch. 12 scope note to topic 4 (1965); W. Page Keaton, *et al.*, Prosser and Keaton on Torts § 56 (5th ed. 1984) ("In the determination of the existence of a duty, there runs through much of the law a distinction between action and inaction."); *cf. Farris v. District of Columbia*, 257 A.3d 509, 522 (D.C. 2021) (McLeese, J., concurring in part) ("[T]he line between acts and omissions can be very difficult to draw."). Consistent with those principles, we have never applied a heightened foreseeability standard when the defendant affirmatively removed a protection against foreseeable crime that a plaintiff had put in place.

The Second Restatement of Torts supports Freyberg's view that a person who removes a protection that another has put in place can be held liable in tort for foreseeable criminal activity that follows, at least if they did not "take reasonable steps to replace [the protection] or to provide a substitute." Restatement (Second)

of Torts § 302B cmt. e.  Section 302B—which we have adopted in previous cases,

*see, e.g.*, *Lacy*, 424 A.2d at 323; *Parking Mgmt., Inc. v. Gilder*, 343 A.2d 51, 55

(D.C. 1975)—states that "a reasonable [person] is required to anticipate and guard

against the . . . criminal[] misconduct of others . . . where the actor's own affirmative

act has created or exposed the other to a recognizable high degree of risk of harm

through such misconduct."  Restatement (Second) of Torts § 302B cmt. e.  This

applies, in particular, "[w]here the actor's affirmative act is intended or likely to

defeat a protection which the other has placed around his person or property for the

purpose of guarding them from intentional interference."  Restatement (Second) of

Torts § 302B cmt. e, illustration C.[4]

We agree with that approach and hold that Freyberg did not need to make a

showing of heightened foreseeability of an intervening criminal act here because he

has alleged that his landlords affirmatively removed protections against criminality

---

[4] Section 302B is cross-referenced in § 449, which provides that, "[i]f the likelihood that a third person may act in a particular manner is . . . one of the hazards which makes the actor negligent," the actor can still be held liable.  Restatement (Second) of Torts § 449; *see id.* cmt. a ("This Section should be read together with § 302B, and the Comments to that Section.").  Comment a to § 449 contemplates that the actor "becomes negligent" where it was "his conduct [that] created or increased the risk of harm through the misconduct" of the third party.  *See also* Restatement (Third) Torts § 37 cmt. d (affirming that § 302B of the Second Restatement provides an exception to the general rule that actors are not responsible for controlling third parties with whom they have no special relationship).

that he had put in place.  In taking those affirmative acts, his landlords undertook a duty not to unreasonably expose Freyberg to an increased likelihood of criminality that he himself had taken measures to protect against but that his landlords then defeated.  Permitting liability in these circumstances does not broadly require the landlords to be an "insurer of others' safety," *DiSalvo*, 974 A.2d at 871—as this court has been concerned about in pure failure-to-protect cases—because they needed only to avoid exposing Freyberg to additional risks that they themselves created.  In short, they were required only to leave Freyberg in the same general position as they found him.  By choosing to remove the protections that Freyberg put in place, his landlords incurred a duty to act reasonably,[5] and to provide some substitute measures to protect against foreseeable crimes on par with the protections that Freyberg himself had put in place.

Freyberg's allegations fit neatly within this theory of liability.  He has alleged sufficient facts to show that, by unlocking and leaving his front door open, his landlords took an "affirmative act" that was "likely to defeat a protection which

---

[5] Here, such reasonable steps might include keeping the door closed and locked as much as reasonably possible during the remediation work, completing background checks on the contractors, or monitoring who was coming and going from the unit during the remediation work.  It could well be that the landlords took such steps, but at the motion-to-dismiss stage, we take Freyberg's allegations as true, *Chamberlain*, 931 A.2d at 1022, and Freyberg has alleged that they did not do so.

[Freyberg] ha[d] placed around his . . . property for the purpose of guarding [it] from intentional interference." Restatement (Second) of Torts § 302B cmt. e. The landlords through their own actions created an increased risk of criminality: home invasion and theft are clearly far more likely when somebody leaves their front door unlocked and ajar. As the Tenth Circuit summarized, in language that is fitting here:

> In the instant case, the injury was of the type that . . . the locks on the plaintiff's door were meant to protect against. . . . There is at least a jury question[6] whether, by unlocking the plaintiff's door, [the defendant] "defeat[ed] a protection which [the plaintiff] placed around [her] person or property for the purpose of guarding them from intentional interference."

*McDermott v. Midland Management, Inc.*, 997 F.2d 768, 774 (10th Cir. 1993) (quoting Restatement (Second) of Torts § 302B, cmt. e).

The trial court did not address this theory of negligence, and we conclude that Freyberg pled it sufficiently to survive a motion to dismiss without any need to show heightened foreseeability. When somebody affirmatively acts to remove a protection that another has put in place, they must take reasonable steps to protect against foreseeable risks that their actions invited, and when those risks involve

---

[6] We caveat that it would be premature to say Freyburg's claims present a jury question. There has not yet been discovery in this case, so it is not clear his claims have sufficient factual backing for that. We conclude only that his claims survive a motion to dismiss.

intervening criminal acts, there is no need to make the additional showing of heightened foreseeability. That requirement, applicable in pure failure-to-protect cases, does not extend to this scenario.

**B.**

Freyberg also contends that his negligence claim is supported under a pure failure-to-protect theory: that the landlords failed to secure the building, which allowed the shooting to occur and ultimately led to his property being stolen. We agree with the trial court that Freyberg's allegations are too conclusory to state a claim under this theory.

As discussed above, a tenant's allegations that their landlord failed to protect them from intervening criminal acts must sufficiently plead a "heightened showing of foreseeability," i.e., that "the criminal act [wa]s so foreseeable that a duty arises to guard against it." *DiSalvo*, 974 A.2d at 870 (citations omitted); *Iqbal*, 556 U.S. at 679 (complaint must plead factual allegations that "plausibly give rise to an entitlement to relief"). The complaint need not contain "detailed factual allegations," but "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555).

Freyberg's allegations that the landlords were on notice of a heightened possibility of crime are merely conclusory and do not suffice to state a claim. His allegations that the landlords failed to keep the apartment building's doors and locks in good repair are not supported by any specifics: he has not stated which doors are in disrepair or what is wrong with them. The same is true of Freyberg's allegations that there were "trespassers and criminals" in the building and that "gang, drug, and other illegal activities" occurred "in the building's common areas." Freyberg has not given sufficient specificity to these allegations: there are no dates (even approximate) of the alleged illegal activities and no description of the activities beyond vague terms like "gang" and "drug" and "illegal." He has not specified what people were allegedly doing, or when, or in which common areas. These are the types of "[b]are allegations of wrongdoing" that are "insufficient to sustain a complaint." *Logan*, 80 A.3d at 1019.

## C.

Freyberg next argues that he sufficiently pled a claim of breach of contract against DCO. In particular, Freyberg alleged that other residents or their guests engaged in "incessant marijuana smoking" and other "known, repeated violations"

of their leases on his floor of the building and that DCO failed to uphold its contractual obligation to prevent those violations. Recall that the residents' leases prohibited criminal activity and smoking in the apartment building, and also authorized DCO to terminate the leases of any residents violated those provisions. Freyberg did not allege that DCO violated any obligations it owed to him under his own lease, but instead asserts that "he was an implied third party beneficiary" of these provisions in other residents' leases, permitting him to sue his landlords for their failures to enforce those provisions in other residents' leases. We disagree.

There are two fatal flaws with this claim. First, Freyberg has no plausible claim that he was an intended third party beneficiary of other residents' leases. Second, even if he were, DCO did not have any contractual obligation to anybody to terminate leases if residents were found to be in violation of the provisions Freyberg highlights. It was merely empowered to do so. Failure to exercise a power conferred by a contract is not a breach. We discuss these points in turn.

On the first point, as a general rule "a stranger to a contract may not bring a claim on the contract." *Fort Lincoln Civic Ass'n Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008). "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit." *Id.* (quoting

*German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912)). Here, Freyberg has no viable claim that he was an intended beneficiary of other residents' leases. Certainly, the leases' prohibition on smoking and criminal conduct stood to incidentally benefit Freyberg. But Freyberg has not cited to any part of the leases suggesting that he was an intended and direct beneficiary of those provisions, such that he had a right to enforce the provisions in other residents' leases. Freyberg cites only to prohibitions in the lease, restricting what lessees can do, and no provisions that purport to grant enforceable rights to other residents.

Second, the residents' leases only "empower[] [DCO] to terminate the lease of any residents" who violate the lease's restrictions; they do not obligate DCO to do so. "Failure to exercise an option does not constitute breach." *Woodbridge Place Apartments v. Washington Square Cap.*, Inc., 965 F.2d 1429, 1437 (7th Cir. 1992)). So even if Freyberg were a third-party beneficiary of the contractual promises in other residents' leases, there simply was no promise that DCO would terminate any residents' leases for violations of the provisions he highlights. For both reasons, the trial court was correct to dismiss this claim.

## D.

Finally, Freyberg alleges that the trial court abused its discretion in two ways when it dismissed his claims. First, he alleges that the court abused its discretion in

dismissing his claim without giving him leave to amend his complaint. Freyberg never requested leave to amend but nonetheless asserts that the court was required to grant him leave to do so sua sponte. Second, he alleges that the trial court abused its discretion in denying his motion for leave to file a sur-reply in opposition to the motion to dismiss. We disagree on both fronts.

First, the trial court did not abuse its discretion in dismissing Freyberg's complaint without granting him leave to amend it. *See Miller-McGee v. Wash. Hosp. Ctr.*, 920 A.2d 430, 437 (D.C. 2007) (reviewing dismissal of a motion without leave to amend for abuse of discretion). A dismissal under Rule 12(b)(6) is an adjudication on the merits, and so is assumed to be with prejudice, leaving a plaintiff no opportunity to amend their complaint. *See Colvin v. Howard Univ.*, 257 A.3d 474, 485 (D.C. 2021). A trial court generally has no obligation to give a plaintiff leave to amend their complaint, let alone invite them to amend it: only in "exceptional circumstances" have we said that a trial court must "invite a plaintiff to amend his or her complaint when the plaintiff has not sought such amendment." *Miller-McGee*, 920 A.2d at 438 (citation omitted). We found those exceptional circumstances in one case in which the trial court had previously said the plaintiff would be able to proceed on one of the counts in her complaint, making it "fundamentally unfair and unreasonable" for the court then to dismiss her complaint without offering her leave to amend. *Id.* at 439 (citation omitted). Freyberg has alleged no similar exceptional

circumstances here, and so the trial court had the discretion to dismiss his complaint without affirmatively inviting him to amend it.

Nor did the trial court abuse its discretion in denying as moot Freyberg's motion to file a sur-reply. In Freyberg's proposed sur-reply, he made three arguments in response to the landlords' motion to dismiss. All three simply repeat arguments Freyberg had already made. They are therefore all arguments the trial court had before it when it decided to dismiss Freyberg's claim, and there is no reason to believe Freyberg's ability to file a sur-reply making those arguments (again) would have changed the outcome. The trial court acted within its discretion when it denied as moot Freyberg's motion for leave to file a sur-reply when it dismissed his claims.

### III.

We reverse the dismissal of Freyberg's negligence claim and remand for further proceedings.

*So ordered.*